215 N.J. Super. 295 (1986)
521 A.2d 1295
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS HUGHES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1986.
Decided October 24, 1986.
*296 Before Judges ANTELL and D'ANNUNZIO.
Jeffrey Steinfeld, Assistant Deputy Attorney General, argued the cause for appellant (Alfred A. Slocum, Public Defender, *297 attorney Peter B. Meadow, Assistant Deputy Public Defender, of counsel and on the brief).
Kenneth M. Denti, Deputy Attorney General, attorney for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Kenneth M. Denti of counsel and on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
At approximately 7:00 p.m. September 28, 1982 the cashier at the office of the Courier Post in Cherry Hill was robbed at gun point of a large amount of cash by two men. In connection therewith defendant was indicted for robbery, N.J.S.A. 2C:15-1, possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4, and conspiracy to rob, N.J.S.A. 2C:5-2. After a trial by jury he was convicted of conspiracy and a jury disagreement was recorded as to the other two charges.
On this appeal defendant first argues that the trial court erred in failing to instruct the jury as to the defense of "renunciation of purpose" as an affirmative defense to the charge of conspiracy. It is noted that the issue is raised for the first time on this appeal.
The evidence upon which defendant rests his claim to the defense of renunciation is found in the testimony of defendant himself and the testimony of Detective Beverly of the City of Camden Police Department. According to defendant, during the period of approximately one month before the robbery he had been approached on a number of occasions by Tyrone Wolley who solicited him to take part in robbing the Courier Post. On each occasion defendant rejected the invitation and answered Wolley that he was not interested in doing armed robberies. Approximately one or two weeks before the Courier Post robbery actually occurred, defendant visited Detective Beverly and told him of Wolley's solicitations. He did not, however, suggest that he had agreed to join the enterprise and, in fact, said that he told Wolley he would not do so. His *298 purpose, he said, in giving Detective Beverly the information was to enable the police to investigate the matter.
The defense of renunciation to a charge of conspiracy is found in N.J.S.A. 2C:5-2e:
Renunciation of purpose. It is an affirmative defense which the actor must prove by a preponderance of the evidence that he, after conspiring to commit a crime, informed the authority of the existence of the conspiracy and his participation therein, and thwarted or caused to be thwarted the commission of any offense in furtherance of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of criminal purpose as defined in 2C:5-1d....
It is evident that the basic condition of the defense finds no support in the evidence. The statute presupposes an acknowledgment by the actor that he actually conspired to commit a crime and its benefits are conferred only where he informs police authority of the conspiracy's existence "and his participation therein...." Where the elements of the defense have been shown by a preponderance of the evidence one can be said to have "renounced" the conspiracy. Renunciation, after all, posits prior participation, and defendant could not renounce a conspiracy he had not joined. The defense was not available to defendant for the reason that, as he testified, he had steadfastly refused to support the criminal undertaking. His testimony to this effect as well as Detective Beverly's was relevant, not to whether he had renounced the conspiracy, but only to whether he had ever joined it in the first place. Once this issue was resolved against defendant there was nothing else in the record to support a finding of renunciation.
Defendant next contends that the trial judge improperly concluded that defendant had failed to make a prima facie showing that the State had unconstitutionally used its peremptory challenges. During the jury selection process defense counsel objected that the prosecutor was exercising his peremptory challenges to exclude blacks from the jury. The court ruled that a pattern of systematic exclusion had not been shown, and although defendant asked the court to inquire as to the prosecution's reasons for exercising its challenges as it did *299 or, in the alternative, to dismiss the panel and start jury selection anew, all relief was denied.
The issue was recently treated in State v. Gilmore, 103 N.J. 508 (1986). It was there held that although a presumption exists that the prosecution has exercised its peremptory challenges on constitutionally permissible grounds, this may be rebutted by a prima facie showing that (1) "the potential jurors wholly or disproportionally excluded were members of a cognizable group within the meaning of the representative cross-section rule," and that (2) "there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." Id. at 535-536. The court gave little guidance as to the meaning of "substantial likelihood," noting that "the trial court should consider all of the relevant circumstances." Id. at 536. Aside from citing certain relevant types of evidence to be considered, the standard for distinguishing between the permissible ground of situation-specific bias and the impermissible ground of presumed group bias was not elaborated. The Court said, "Here as in other contexts we ultimately must depend on the judge's sense of fairness and impartial judgment." Id. at 545.
In the case before us, of the fifty to sixty people who were called for the jury selection process, five were minority females. Of those five, three were called to serve on the jury. All were black. They were eventually excused by the prosecutor and as a result no blacks served on the jury. As to one of the three, there is a clear basis to support the view that the excuse was not grounded in a presumption of group bias since the prospective juror acknowledged knowing a potential alibi witness for the defendant. As to the other two, although we are able to discern no rational justification for the excuses, in the last analysis what is involved is a judgment call by a trial judge who was closely involved in the situation as it unfolded and upon whose sense of fairness and impartial judgment we *300 have been adjured to depend. Viewing the record from this perspective, we find no merit to defendant's contention that the State exercised its peremptory challenges so as to exclude minority representation from the jury.
Defendant also contends that the trial court erred in denying his motion for a directed judgment of acquittal. The test on such a motion is
... whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
State v. Reyes, 50 N.J. 454, 459 (1967).
Defendant was identified by an eyewitness as being present during, and participating in, the robbery. The weight and credibility of that evidence was for the jury to determine, State v. Forcella, 35 N.J. 168, 175 (1961), cert. den. 369 U.S. 866, 82 S.Ct. 1035, 8 L.Ed.2d 86 (1962), and it suffices to support the conspiracy conviction. While the conviction was inconsistent with the jury deadlock on the robbery charge, the rule generally applied is that such inconsistency does not invalidate a verdict of guilty. State v. Roller, 29 N.J. 339, 348-349 (1959); State v. Thrunk, 157 N.J. Super. 265, 277 (App.Div. 1978); State v. Still, 112 N.J. Super. 368, 373 (App.Div. 1970), certif. den. 57 N.J. 600 (1971). The doctrine takes into account what Justice Holmes characterized in Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), as the jury's power of lenity, and proceeds on the reasoning that merely because the defendant enjoyed the benefit of leniency as to one charge, he should not be immunized from criminal liability on another charge based on substantially identical facts.
Defendant's final contention is that the verdict sheet, which he claims conflicted with the court's oral charge, should not have been submitted to the jury, and, having been submitted, the jury should have been instructed that it was not *301 evidence of guilt. The point is now raised for the first time as plain error, and we find it to be clearly without merit. R. 2:11-3(e)(2).
Affirmed.