245 N.J. Super. 99 (1990)
584 A.2d 268
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLARD F. BURNETT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1990.
Decided December 26, 1990.
*100 Before Judges ANTELL, O'BRIEN and KEEFE.
Loni M. Hand, Assistant Prosecutor, argued the cause for the appellant (Paul T. Koenig, Jr., Mercer County Prosecutor, attorney).
M. Virginia Barta, Assistant Deputy Public Defender, argued the cause for the respondent (Wilfredo Caraballo, Public Defender, attorney; M. Virginia Barta, of counsel and on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue to be decided on this appeal is whether the jury's acquittal of defendant Willard Burnett on the predicate offenses of theft, possession of cocaine, and possession of cocaine with intent to distribute it, while convicting defendant on the compound offense of official misconduct, requires the conviction to be vacated because of inconsistency.
Defendant Willard Burnett, a Trenton police officer, was tried on three counts of official misconduct allegedly occurring on April 8, 12 and 13, 1987 (N.J.S.A. 2C:30-2a and b), two counts of theft by unlawful taking occurring on April 8 and 13, 1987 (N.J.S.A. 2C:20-3a & 2C:2-6), one count of possession of cocaine occurring on April 13, 1987 (N.J.S.A. 24:21-20a(1) and 2C:2-6), and one count of possession of cocaine with intent to distribute it occurring on April 13, 1987 (N.J.S.A. 24:21-19a(1) and 2C:2-6.) A jury found him guilty of misconduct in office on April 13, 1987 and acquitted him on all other counts.
*101 The trial judge granted defendant's motion for judgment of acquittal n.o.v. finding that defendant's conviction for misconduct on April 13, 1987 was inconsistent with his acquittal on the drug and theft offenses for the same date because those offenses formed the factual basis of the misconduct charge. The State appeals that judgment and contends that defendant's conviction was supported by the evidence and is a valid conviction notwithstanding the apparent inconsistency. We agree and reverse the judgment under review. The defendant's conviction is reinstated and the matter is remanded for sentencing.
The record reveals that sometime in 1987 Dennis "Skeet" Cheston, an admitted drug dealer in the Trenton area, approached Captain Golden of the Trenton Police Department and complained about the alleged drug activities of defendant Burnett. An investigation ensued, leading to the indictment in question.
Cheston claimed that Burnett approached him in 1985 or 1986 and the two men worked out a deal whereby Cheston would give Burnett money and/or drugs in return for information from defendant regarding possible police investigations involving Cheston. Cheston said that during the relationship with Burnett he made payments to defendant totalling approximately $25,000. Cheston also testified that on virtually every occasion payments were made directly to Burnett and not to Thomas Parker. Parker, also a Trenton police officer, was indicted with defendant. His trial was severed from Burnett's.
Because the defendant's conviction focused on events that transpired on April 13, 1987, we will not summarize the events of the preceding days except as necessary to explain the events of April 13th. On that date, at approximately 8:00 p.m., Investigator Rossi obtained search warrants for the person of defendant, Thomas Parker and for Trenton Police car number ten.
Investigator Rossi and Detective Ricigliano testified that later in the evening they met with Cheston and Jeannie Poole. Cheston had recruited Poole to help with the investigation by *102 playing the role of the girl whom defendant and Parker had earlier agreed to "knock off," meaning that they had agreed to take money and drugs from her and split the take with Cheston. Cheston was then equipped with a recorder and transmitter and Poole was provided with two one ounce plastic bags of cocaine, valued at the time between $1,400 and $2,000, and $320 in $20 bills. The serial numbers of the bills were recorded.
Officers Rossi and Ricigliano testified that while Poole and Cheston were under surveillance they were approached by defendant and Parker in Trenton Police car number ten. Defendant and Parker exited their vehicle while Cheston and Poole exited their vehicle. According to Rossi and Ricigliano, defendant immediately walked up to Ms. Poole and announced, "the girl's loaded, Tom." Poole said that while Parker spoke with Cheston, defendant asked her what her name was and went into her pocket and pulled out the two bags of cocaine and the $320.
A call then came in on the police radio directing defendant and Parker to lend backup support to their captain at the corner of Prospect and Rutherford Avenue. The call had been orchestrated by the investigating officers so that defendant and Parker could be arrested as they arrived at the backup location. Cheston testified that when the call came on the radio he asked defendant to give him something back. The two men argued, and finally defendant gave one of the plastic ounce bags of cocaine to Cheston. Defendant and Parker then left in the police car without arresting Cheston or Poole. When defendant and Parker arrived at the backup location, they were arrested.
Pursuant to the search warrant, the investigating officers seized numerous items of evidence from the police car, including one of the two ounces of cocaine and the $320 which the police had provided to Poole. The twenty dollar bills were found in the same order and had the same serial numbers as the ones given to Poole. In addition, six plastic heat sealed bags of suspected crack cocaine were also recovered from the police car. Investigator Rossi testified that the additional crack *103 cocaine had a distinctive packaging which matched the packaging of evidence turned over by defendant earlier that day to the Trenton Police Department on another case.
In an effort to explain the presence of drugs in the car from an earlier arrest, defendant testified that he arrested another person for possession of crack cocaine that day as a result of which several crack vials were recovered. He testified that Parker picked up many loose vials of crack and put them somewhere on the seat of the police car. Defendant also said that Parker completed the property report on that arrest and was responsible for turning in the drugs.
Concerning the encounter with Cheston and Poole on April 13th, defendant testified that he encountered Cheston's car on Mellon Street and saw him and a black female, later identified as Poole, exit the car. When he approached Poole, he saw a lot of money hanging out of her jacket pocket and he stated "the girl is loaded, Tom." Defendant stated that he grabbed the stack of money out of Poole's pocket, and told Parker to search her. Defendant denied seeing any drugs in Poole's pocket.
Defendant stated that he was asking Poole what her name was and how much money she had when the call came in on the radio to backup the captain. Defendant then asked Parker what he wanted to do with Cheston and Poole, and Parker told him to let them go back to their car. Defendant testified that he was trying to get to the backup location because he felt it was the type of call that should be responded to quickly. He said that he did not take any drugs from the scene or give any to Cheston but could not see what Parker did because things happened too quickly and they were in different locations. Defendant said he told Cheston and Poole that they would be right back and instructed them to wait where they were because it was his intention to continue the investigation and give Poole back her money.

*104 I
All three of the misconduct counts of the indictment, including the count on which defendant was convicted, merely recited the statutory language of N.J.S.A. 2C:30-2(a) and (b), and made no reference to any specific allegations of misconduct. At the close of the State's case, defendant moved for a directed verdict of acquittal, claiming that the indictment made insufficient allegations in regard to those three counts and that he had a right to expect more specificity. The trial judge denied the motion and ruled that the specific factual allegations supporting the official misconduct counts were specified in the subsequent counts of the indictment.
During the course of the trial the judge instructed the jury to limit its consideration of official misconduct to the evidence concerning the underlying theft and drug offenses. However, in his charge to the jury concerning misconduct, the judge instructed the jury that it could consider defendant's failure to arrest Cheston and/or Poole, along with the underlying offenses. These were the words used by the judge:
In determining whether the defendant is guilty of official misconduct, you may consider only his actions on April 8, April 12, and April 13th, 1987, that is, those acts which are related to events surrounding the alleged thefts of money and/or drugs from Dennis Cheston, and/or Jeannie Poole.
That is, that the defendant took money and/or drugs from one or both of them, that he possessed the drugs, and/or that he possessed the drugs with an intent to distribute them, and that he failed to arrest Dennis Cheston and/or Jeannie Poole under circumstances that warranted arrest. (emphasis added).
Defendant argued at his post trial motion that, under the circumstances, he could not be convicted of misconduct without being found guilty of one of the underlying theft or drug offenses alleged to have taken place on the same day. The trial judge agreed.
On appeal, the State claims the trial judge erred in granting defendant's motion because the jury verdict was supported by the evidence and the inconsistent verdicts of acquittal on the theft and drug offenses pertaining to April 13th did not vitiate the misconduct conviction. In the alternative, the State contends *105 that defendant's failure to arrest Cheston and Poole on the night of April 13, 1987 supported his conviction for official misconduct standing alone. The State also contends that proof of the theft and drug offenses in the indictment was not necessary to establish the essential elements of official misconduct, and that the jury could have considered all of the facts and decided they were convinced beyond a reasonable doubt that defendant's conduct showed an abuse of his position, without being convinced beyond a reasonable doubt of his guilt on the underlying offenses.
As to the latter contentions, defendant argues that because the language of the judge's charge joined the failure to arrest Poole and Cheston with the underlying offenses rather than present it as a separate predicate for the crime of official misconduct, the failure to arrest Poole and Cheston could not by itself support the conviction. In addition, defendant points out that no acts of misconduct, other than the failure to arrest, the theft and the drug offenses, were ever relied upon by the State.
Defendant's argument has merit. The jury was instructed to consider only the defendant's actions on the dates of April 8, 12 and 13, 1987, and to limit its consideration of official misconduct to the evidence concerning the underlying offenses coupled with the defendant's failure to arrest Poole and Cheston. In addition, the jury was specifically instructed not to consider other conduct which the defendant testified he engaged in on those dates.
A jury may not convict on a theory of guilt not advanced by the State at trial and not charged by the court. The Supreme Court in State v. Schmidt, 110 N.J. 258, 540 A.2d 1256 (1988), stated the principle succinctly:
It is `the nondelegable and nonremovable responsibility of the jury to decide' the question of guilt or innocence in accordance with those instructions. (citation omitted). The "`question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury....'" (citation omitted). To this we would add only that the question is not whether a theory of guilt *106 may be spelt out of a record, but whether guilt on that theory has been found by a jury.
Id. at 265, 540 A.2d 1256 (emphasis in original). Because of the way the indictment was framed, the way in which the State presented its case, and the manner in which the jury was instructed, the "unauthorized" acts which formed the basis for the misconduct indictment could only have been one or more of the alleged theft or drug offenses occurring on April 13th. Thus, when the jury acquitted defendant of each of those offenses, its conviction for misconduct on that day would facially appear to be inconsistent. Defendant argues that where an acquittal on one count of an indictment precludes the finding beyond a reasonable doubt of the element of an offense charged in another count of the same indictment for which defendant is convicted, the conviction must be vacated on due process grounds because it is irrational.
The United States Supreme Court addressed this issue in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In that case, a multiple count indictment charged the defendant with possessing intoxicating liquor, selling intoxicating liquor, and maintaining a common nuisance by keeping intoxicating beverages for sale. At trial, the prosecution presented identical evidence on all three counts. The jury found the defendant guilty of maintaining a common nuisance and acquitted him of the remaining charges. On appeal, defendant argued that the jury's return of inconsistent verdicts compelled the reversal of his conviction. He contended that the circumstances of the case required that the jury find him guilty of possessing intoxicating liquor in order to convict him of maintaining a common nuisance. The Supreme Court rejected defendant's argument and held that consistency in the verdict is not necessary. The principal rationale relied upon by the Court for its decision was the historic power of juries to check arbitrary government action by showing leniency to defendants. According to the Court, the lack of consistency did not necessarily indicate that the jury was unconvinced of the defendant's *107 guilt. To the contrary, the jury's return of inconsistent verdicts may represent an exercise of leniency or nullification. Although the jury had no "right" to return verdicts resulting from compromise, it did have the "power" to do so. Id. at 393, 52 S.Ct. at 190.
After the Supreme Court's holding in Dunn the circuit courts generally adhered to the principle that jury verdicts returned on a multiple count indictment against a single defendant need not demonstrate consistency. Over time, however, some courts began to recognize exceptions to the Dunn rule. One of the cases which refused to follow Dunn was United States v. Hannah, 584 F.2d 27 (3d Cir.1978), a case relied upon by defendant in this appeal. In that case Hannah was indicted for conspiring to distribute heroin in one count of the indictment and another count charged him with using a communication facility, i.e., a telephone, to further and facilitate the underlying conspiracy. The jury acquitted defendant of the conspiracy count but found him guilty on the facilitation count. The trial judge entered a judgment n.o.v. directing an acquittal and the government appealed. The Third Circuit distinguished Dunn on the grounds that, while the separate counts set forth in the Dunn indictment could have stood alone and been tried separately, the counts in Hannah were inter-dependent and could not have stood alone. The court said: "Because the jury found Hannah not guilty of conspiracy, the felony relied upon by the government to satisfy the felony requirement of [the facilitation count], the government's case [on that count] was insufficient as a matter of law." Id. at 30.
Concern over the increasing number of these exceptions to the Dunn rule prompted the United States Supreme Court to grant certiorari in United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Powell was indicted on a number of counts for violations of the federal narcotics laws. Count one charged her with conspiracy to possess cocaine with intent to distribute it. The overt acts listed in support of this conspiracy included taped telephone conversations indicating *108 that respondent was helping her husband and son distribute drugs and collect money for drugs sold. Count nine charged her with possession of a specific quantity of cocaine with intent to distribute it. Counts three through six charged her with the compound offenses of using the telephone in "committing and in causing and facilitating" the alleged conspiracy and possession. The jury acquitted Powell of counts one and nine as well as one facilitation count  count six. However, the jury found her guilty on counts three, four and five, the remaining facilitation counts. On appeal, Powell argued that the verdicts were inconsistent and that she was entitled to reversal of the telephone facilitation convictions for that reason. The Ninth Circuit Court of Appeals agreed, as had the Third Circuit in Hannah, and found that an acquittal on the predicate felony necessarily indicated that there was insufficient evidence to support the facilitation conviction and distinguished Dunn on that basis. The United States Supreme Court reversed, and in doing so expressed its disagreement with other circuits which had carved out similar exceptions, such as Hannah. United States v. Powell, supra, 469 U.S. at 69, 105 S.Ct. at 479, 83 L.Ed.2d at 471.
The Court reaffirmed the Dunn rule. It said:
[I]nconsistent verdicts  even verdicts that acquit on a predicate offense while convicting on the compound offense  should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. (citations omitted).
Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
Powell, supra, 469 U.S. at 65, 105 S.Ct. at 476-77, 83 L.Ed.2d at 468-69. Powell was decided by the United States Supreme *109 Court under its supervisory powers over federal courts because Harris v. Rivera, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) had previously held that the Constitution did not afford a defendant relief under a writ of habeas corpus resulting from inconsistent verdicts rendered after a state trial. See Powell, supra, 469 U.S. at 63, 65, 105 S.Ct. at 471, 477, 83 L.Ed.2d at 467, 469. Thus, the United States Constitution does not afford defendant Burnett any relief from an inconsistent verdict.
Moreover, defendant does not assert a State constitutional basis for his argument, nor do we perceive any. We are fully satisfied, notwithstanding defendant's argument to the contrary, that the New Jersey Supreme Court has fully embraced the Dunn and Powell rationale, albeit in different factual situations from the one before the court now, and would apply that rationale to these circumstances. In State v. Ingenito, 87 N.J. 204, 432 A.2d 912 (1981) Justice Handler wrote:
The responsibility of the jury in the domain of factual findings, and ultimate guilt or innocence, is so pronounced and preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant. Dunn v. United States, 284 U.S. 390, 393-394, 52 S.Ct. 189, 190-191, 76 L.Ed. 356, 358-359 (1932). Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt. It may also refuse to return a verdict in spite of the adequacy of the evidence. State v. Czachor, 82 N.J. 392 [413 A.2d 593] (1980). This is indicative of a belief that the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole.
Id. at 211-12, 432 A.2d 912 (citation omitted). In State v. Crisantos (Arriagas), 102 N.J. 265, 508 A.2d 167 (1986), Justice Stein, writing for the Court said:
A criminal jury may return `a verdict of innocence in the face of overwhelming evidence of guilt,' State v. Ingenito, supra, 87 N.J. at 212 [432 A.2d 912] or it may return illogical or inconsistent verdicts that would not be tolerated in civil trials. United States v. Powell, 469 U.S. 57, 65-68, 105 S.Ct. 471, 476-78, 83 L.Ed.2d 461, 467-69 (1984); Dunn v. United States, 284 U.S. 390, 393-94, 52 S.Ct. 189, 190-91, 76 L.Ed. 356, 358-59 (1932); State v. Ingenito, supra, 87 N.J. at 211-12 [432 A.2d 912]; State v. Simon, supra, 79 N.J. [191] at 208 [398 A.2d 861 (1979)].
Id. at 272, 508 A.2d 167. See also, State v. Ragland, 105 N.J. 189, 204-05, 519 A.2d 1361 (1986); State v. Dancyger, 29 N.J. *110 76, 92-93, 148 A.2d 155 (1959), cert. den. 360 U.S. 903, 79 S.Ct. 1286, 3 L.Ed.2d 1255 (1959).
In response to a challenge that the verdicts returned by the jury as to a given defendant were inconsistent and therefore invalid, the New Jersey Supreme Court in Dancyger, supra, adopted the Dunn rationale in the face of defendant's contention that the jury's verdict of guilty on the larceny count was inconsistent with its failure to reach a verdict on the entering with intent to steal count. The defendant had been indicted for entering the room of Estelle Grossbardt with intent to steal and in the second count for stealing her platinum diamond ring which had been located in that room. After concluding that there was ample evidence to support the guilty verdict on the larceny count, the Supreme Court, citing Dunn, stated that "[a] verdict cannot be upset by speculation on such a matter." Dancyger, supra, 29 N.J. at 93, 148 A.2d 155. Later, in State v. Still, 112 N.J. Super. 368, 271 A.2d 444 (App.Div. 1970), certif. den. 57 N.J. 600, 274 A.2d 53 (1971), the defendant claimed that his conviction for assault with intent to commit sodomy was inconsistent with his acquittal on the second count of attempt to commit sodomy. After attempting to explain how the elements of each offense were different and that the jury was free to view the evidence differently as to each charge, this court said:
[I]n the alternative, assuming that they were inconsistent, the modern and majority view is that consistency between the verdicts on the several counts of an indictment or on several indictments, each charging substantially the same offense, is unnecessary where defendant is convicted on one or some counts or indictments but acquitted on others. Such a conviction will generally be upheld irrespective of its rational incompatibility with the acquittal. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189 [190] 76 L.Ed. 356 (1932).
Id. at 373, 271 A.2d 444 (additional citation omitted).
More recently, in State v. Hughes, 215 N.J. Super. 295, 521 A.2d 1295 (App.Div. 1986), the defendant contended that his conviction for conspiracy to rob was inconsistent with the jury's failure to reach agreement on his indictment for robbery and possession of a weapon for an unlawful purpose. We reviewed the record and found that there was sufficient evidence to *111 support defendant's conviction for conspiracy to rob because there had been an eyewitness to defendant's presence during the robbery and participation in it. We observed further:
While the conviction was inconsistent with the jury deadlock on the robbery charge, the rule generally applied is that such inconsistency does not invalidate a verdict of guilty. (citations omitted.) The doctrine takes into account what Justice Holmes characterized in Dunn v. United States (citation omitted), as the jury's power of lenity, and proceeds on the reasoning that merely because the defendant enjoyed the benefit of leniency as to one charge, he should not be immunized from criminal liability on another charge based on substantially identical facts.
Id. at 300, 521 A.2d 1295. See also, State v. Pickett, 241 N.J. Super. 259, 266, 574 A.2d 1014 (App.Div. 1990).
Defendant Burnett's reliance upon the cases of State v. Hawkins, 178 N.J. Super. 321, 428 A.2d 1322 (App.Div. 1981), certif. den. 87 N.J. 382, 434 A.2d 1066 (1981); State v. Peterson, 181 N.J. Super. 261, 437 A.2d 327 (App.Div. 1981), certif. den. 89 N.J. 413, 446 A.2d 144 (1982), and State v. Mangrella, 214 N.J. Super. 437, 519 A.2d 926 (App.Div. 1986), certif. den. 107 N.J. 127, 526 A.2d 194 (1987), is misplaced. In only one of those cases, Hawkins, was the defendant's conviction on the alleged inconsistent verdict reversed by this court. However, the circumstances in Hawkins were substantially different from those in this case. Hawkins was indicted with Thomas and Donna Ann Eckert for conspiracy to violate the narcotics laws. The indictment did not allege the existence of any unindicted or unnamed coconspirators nor did it allege any separate predicate offenses. The jury found Thomas and Donna Ann Eckert not guilty but found defendant guilty of conspiracy. Dunn was distinguished in that in Hawkins the same evidence was used as to all three defendants. The majority pointed out that, "[i]f a jury finds that the State failed to prove beyond a reasonable doubt that Doe conspired with Roe, logic defies an explanation of how it can find proof beyond a reasonable doubt that Roe conspired with Doe. Conspirators must have a `shared objective.'" Hawkins, supra, 178 N.J. Super. at 323, 428 A.2d 1322 (citation omitted). More importantly, as our Supreme Court pointed out in Ingenito, supra, the rationale of *112 Dunn is that "we accept inconsistent verdicts that accrue to the benefit of a defendant." Ingenito, supra, 87 N.J. at 212, 432 A.2d 912. In Hawkins, because the evidence was such that if it did not support a verdict against the Eckerts, the inconsistency certainly did not accrue to the benefit of Hawkins who was found guilty.
Peterson and Mangrella, on the other hand, are simply not cases involving inconsistent verdicts. The court in Peterson distinguished its facts from those cases such as Hawkins and United States v. Hannah, supra, which dealt with inconsistent verdicts. Peterson, supra, 181 N.J. Super. at 266, 437 A.2d 327. The Peterson court found that the jury's verdict of acquittal for bribery could be explained on the basis that the jury believed that defendant had sought no benefit for himself. On the other hand, a conviction for official misconduct at that time did not require proof that the official accept a benefit for himself. Thus, the same facts were not necessary to establish a conviction on each of the two counts. The same is true of Mangrella. In that case the defendant was acquitted on a theft charge and convicted for burglary involving the same premises. The verdict was not inconsistent because the jury could have found that while defendant or his accomplice entered the Fotomat with purpose to commit a theft, neither took property with the purpose of depriving the owner thereof. Mangrella, supra, 214 N.J. Super. at 441, 519 A.2d 926. To the extent that either Peterson or Mangrella can be read to hold, as the defendant here contends, that an acquittal on one count of an indictment precludes the finding beyond a reasonable doubt of a common element of the offense charged in another count of the same indictment and requires an acquittal on the latter count, we disagree. Instead, we adhere to the principles announced in Dunn and Powell which we are satisfied have been endorsed by our Supreme Court in Ingenito, Crisantos and Ragland.
*113 As noted in Powell, supra, a criminal defendant is "afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." Id. 469 U.S. at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470. The evidence in this case, both in the trial judge's view and in our view, was more than adequate to support defendant's misconduct conviction beyond a reasonable doubt. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964). We disagree, however, with his conclusion that the inconsistency between the two verdicts constitutionally required him to vacate the conviction.
Thus, we conclude that the judgment entering acquittal n.o.v. on defendant's misconduct conviction must be reversed. The matter is remanded for the entry of an appropriate judgment of conviction and for sentencing.