656 A.2d 437

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ROOSEVELT GREY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 8, 1995—Decided April 7, 1995.

Before Judges SHEBELL, SKILLMAN and KLEINER.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Debra J. Dorfman,* designated counsel, and on the brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Marcy H. Geraci,* Deputy Attorney General, of counsel, and on the letter-brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On November 19, 1992, defendant, Roosevelt Grey, and codefendant, Marvin Jenkins, were charged in Essex County Indictment No. I–3958–11–92 with second degree conspiracy to commit arson, (*N.J.S.A.* 2C:5–2 and 2C:17–1) (count one); second degree aggravated arson, (*N.J.S.A.* 2C:17–1a) (count two); three counts of murder, (*N.J.S.A.* 2C:11–3a(1) and (2)) (counts three, five and seven); three counts of felony murder, (*N.J.S.A.* 2C:11–3a(3)) (counts four, six and eight); and third degree terroristic threats, (*N.J.S.A.* 2C:12–3) (count nine). Defendant was tried separately before a jury, and on October 4, 1993, was found guilty on counts one, four, six and eight, and not guilty on counts two, three, five, seven and nine. Defendant moved to set aside his three felony murder convictions on the ground that the verdict was inconsistent as the jury had found him not guilty of the predicate crime of aggravated arson, and therefore a necessary element of felony murder was negated.

Defendant's motion was denied, and he was sentenced to forty-five (45) years imprisonment with thirty (35) years of parole ineligibility on count four. Count one was merged into count four. On counts six and eight defendant was sentenced to thirty years, to run concurrent with each other and concurrent with count four.

In his brief on appeal, defendant raises the following legal arguments:

POINT I: THE TRIAL COURT ERRED IN REFUSING TO VACATE THE JURY'S GUILTY VERDICT ON THREE COUNTS OF FELONY MURDER.

POINT II: THE DEFENDANT'S SENTENCE IS EXCESSIVE.

Defendant gave a statement to the police which was reduced to writing. He stated that he was selling drugs for Marvin Jenkins, who supplied him with four hundred dollars worth of drugs, which

defendant stashed behind a tree. Jessie Bellinger had been present when he stashed the drugs. Defendant left the stash to make a "big sale," and when he came back, Jessie and the stash were gone. Defendant went searching for Jessie, and ran into Jenkins, who told defendant to look for Jessie at his mother's house, and to tell him, "[t]o bring his ass out there before he [Jenkins] burns the house down." Jessie was not home so defendant gave the message to Jessie's sister. Defendant then met with Jenkins and told him what happened. Jenkins replied that, "he was going to get the m[——] f[——], I'll catch him. This wasn't the first time he did this to me."

After midnight, on April 1, 1992, Jenkins told defendant that Jessie was staying in an abandoned house. Jenkins went to a gas station and got a can of gas. The two went behind the house, where Jenkins took the gas can from his truck and told defendant "to watch out, make sure nobody comes into the lot, in the back of the house." Jenkins removed wood that was covering an opening and entered the house for about seven minutes, while defendant was "looking out." Jenkins came out rubbing his hands together, as if to wipe the odor of gas from them. Jenkins told defendant he would meet him later and "took off real fast" in his car. Defendant walked to his mother's house and was standing on the porch when he saw a "big clog of smoke" coming out of the abandoned house. Defendant then went inside and went to bed.

A captain of the Newark Fire Department testified that on April 1, 1992, at about 1:42 a.m., he was called to the burning house. As the fire-fighters entered, the captain smelled the heavy odor of gasoline and informed the crew to be careful. The fire was extremely heavy on the second and third floors and in the rear of the house. Flames were coming from every window. It took about two and a half hours to extinguish the fire. Three bodies, later identified as three homeless people, were found burned to death on the third floor. Jessie apparently was not in the house. The fire was determined to be arson.

The afternoon after the fire, defendant was arrested on an unrelated outstanding warrant, and served sixty (60) days in jail. Defendant stated that upon his release he met with Jenkins, who asked if he had said anything about the fire. Jenkins asked if defendant wanted to sell drugs for him again, and defendant declined.

An investigator of the Essex County Prosecutor's Office testified that during the investigation of the fire he learned that there were threats made against the Bellinger family. The family lived within two blocks of the fire. In October 1992, he learned that on the night of the fire someone named Akbar had come to the Bellinger home looking for Jessie. The investigator obtained a photograph of Akbar, also known as Roosevelt Grey. This began a search for defendant.

Defendant fled to New York when he found out that the police were looking for him. On October 7, 1992, he contacted the Newark authorities and wanted to know why they were looking for him. He asked to be picked up because he had no transportation. Defendant was brought to the Essex County Prosecutor's office. After being advised of his rights, he told the detectives that he was selling drugs for Jenkins, and that he was present as the "look out" when Jenkins set the fire. Defendant also said that he had gone to the Bellinger house and made threats to burn their house down because Jessie had stolen their drug stash.

Several witnesses testified at trial that defendant was with his girlfriend and her children during the hours the fire was set. Defendant's counsel argued that based on these witnesses' testimony, it could be seen that the inculpatory statement given by defendant resulted from duress.

Defendant argues on appeal that because conspiracy is not one of the enumerated crimes under the felony murder statute, *N.J.S.A.* 2C:11–3a(3), his convictions on the three counts of felony murder cannot stand. Defendant reasons that as a matter of law

acquittal on the charge of aggravated arson vitiates an essential element of the felony murder charge. We reject this reasoning.

In *Dunn v. United States,* 284 *U.S.* 390, 52 *S.Ct.* 189, 76 *L.Ed.* 356 (1932), the court, in reviewing a verdict that convicted on one count of an indictment and acquitted on others, held that consistency in a verdict is not required, since each count is regarded as if it were a separate indictment. *Id.* at 393, 52 *S.Ct.* at 190, 76 *L.Ed.* at 357. The Court stated:

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.
>
>     *      *      *      *      *      *      *      *
>
> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.
>
>     [*Id.* at 393–94, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 359.]

In *United States v. Powell,* 469 *U.S.* 57, 105 *S.Ct.* 471, 83 *L.Ed.*2d 461 (1984), the Court further explained:

> The rule that the defendant may not upset such a verdict embodies a prudent acknowledgement of a number of factors. First, as the above quote suggests, inconsistent verdicts—*even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense.* It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
>
>     [*Powell, supra,* 469 *U.S.* at 65, 105 *S.Ct.* at 476–77, 83 *L.Ed.*2d at 468–69 (emphasis added) (citations omitted).]

The *Powell* court further stated:

> Finally, we note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the

evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe further safeguards against jury irrationality are necessary.

[*Id.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470 (citations omitted).]

The Court then noted:

Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent.

[*Id.* at 68, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470–71.]

Thus, a jury's verdict should generally be insulated from review on the grounds of inconsistent verdicts. *Id.* at 68–69, 105 *S.Ct.* at 479, 83 *L.Ed.*2d at 471. *Cf. State v. Hawkins,* 178 *N.J.Super.* 321, 428 *A.*2d 1322 (App.Div.), *certif. denied,* 87 *N.J.* 382, 434 *A.*2d 1066 (1981) (The court agreed that consistency in verdicts are not required, however, the court found that the jury could not have found beyond a reasonable doubt that defendant was guilty of conspiracy, while acquitting the two codefendants of the same charge.).

In New Jersey we have embraced the *Dunn–Powell* rule. In *State v. Ortiz,* 253 *N.J.Super.* 239, 601 *A.*2d 735 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992), we stated:

[I]t is firmly settled that consistency in verdicts is not required under our law. Any inquiry in this regard is limited to whether the counts of which defendant was convicted were supported by sufficient evidence to permit a rational fact finder to find guilt beyond a reasonable doubt.

[*Id.* at 244–45, 601 *A.*2d 735 (citations omitted).]

We continued in *Ortiz,* by way of *dicta* :

An analysis of the verdict is warranted only in those cases "where an acquittal on one count precludes the finding of one or more elements of an offense charged in a second count as a matter of law." *State v. Peterson, supra,* 181 *N.J.Super.* [261] at 266, 437 *A.*2d 327 [ (App.Div.1981) ]; *see United States v. Powell, supra,* 469 *U.S.* at 68, n. 8, 105 *S.Ct.* at 479, n. 8, 83 *L.Ed.*2d at 471, n. 8.

[*black redaction bar*]

*[Ibid.]*

However, in the earlier case of *State v. Burnett,* 245 *N.J.Super.* 99, 584 *A.*2d 268 (App.Div.1990), we had declared:

> To the extent that either *Peterson* or *Mangrella* [*State v. Mangrella,* 214 *N.J.Super.* 437, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987) ] can be read to hold, as the defendant here contends, that an acquittal on one count of an indictment precludes the finding beyond a reasonable doubt of a common element of the offense charged in another count of the same indictment and requires an acquittal on the latter count, *we disagree.*
>
> [*Id.* at 112, 584 *A.*2d 268 (emphasis added).]

The *Powell* holding has been endorsed by our Supreme Court. See *State v. Crisantos,* 102 *N.J.* 265, 508 *A.*2d 167 (1986) (a jury may return illogical or inconsistent verdicts that would not be tolerated in a civil trial); *State v. Ragland,* 105 *N.J.* 189, 519 *A.*2d 1361 (1986) (the court recognized the "power of the jury to acquit despite not only overwhelming proof of guilt, but despite the jury's belief, beyond a reasonable doubt, in guilt . . . ."). Further, in *State v. Ingenito,* 87 *N.J.* 204, 432 *A.*2d 912 (1981), the Court observed:

> The responsibility of the jury in the domain of factual findings, and ultimate guilt or innocence, is so pronounced and preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant. Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt. It may also refuse to return a verdict in spite of the adequacy of the evidence. This is indicative of a belief that the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole.
>
> [*Id.* at 211–12, 432 *A.*2d 912 (citations omitted).]

In *United States v. Hannah,* 584 *F.*2d 27 (3d Cir.1978), the defendant was indicted in separate counts for conspiring to distribute heroin and for violating 21 U.S.C. § 843(b) by using a communication facility—a telephone—to further and facilitate the underlying conspiracy, an element of which was the "commission of any act or acts constituting a felony." *Id.* at 28. Defendant's conviction on the latter count was attacked on the basis of his acquittal on the conspiracy count. The *Hannah* Court saw fit to distinguish *Dunn* on the grounds that the separate counts set forth in the *Dunn* indictment could have stood alone and been tried separately, whereas the counts set forth in the *Hannah*

indictment were interdependent and could not stand alone. *Id.* at 30. The Court held that, "[b]ecause the jury found Hannah not guilty of conspiracy, the felony relied upon by the government to satisfy the felony requirement of § 843(b), the government's case in [the facilitation count] was insufficient as a matter of law." *Ibid. Powell, supra,* expressed its disagreement with *Hannah* and any case that would carve out such exceptions. *Powell, supra,* 469 *U.S.* at 68–69, 105 *S.Ct.* at 479, 83 *L.Ed.*2d at 471.

The jury in the present case could have found the defendant not guilty of aggravated arson based on compromise, mistake or lenity, therefore, the inconsistent verdict should not vitiate an otherwise reasonable verdict. *See State v. Lopez,* 213 *N.J.Super.* 324, 328, 517 *A.*2d 457 (App.Div.1985); *see also State v. Petties,* 139 *N.J.* 310, 318–19, 654 *A.*2d 979 (1995). A defendant should not be immunized from criminal liability because he enjoyed the benefit of leniency as to another charge based on substantially identical facts. *States v. Hughes,* 215 *N.J.Super.* 295, 300, 521 *A.*2d 1295 (App.Div.1986). Therefore, we direct our focus in the present case to the sufficiency of the evidence, that is, whether a rational fact finder could have found the defendant guilty of felony murder beyond a reasonable doubt, independent of the jury's verdict on the aggravated arson count. *Powell, supra,* 469 *U.S.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470; *Ortiz, supra,* 253 *N.J.Super.* at 245, 601 *A.*2d 735.

*N.J.S.A.* 2C:11–3a(3) provides, in pertinent part:

a. [C]riminal homicide constitutes murder when:

\* \* \* \* \* \* \* \*

(3) It is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, *arson,* burglary, kidnapping or criminal escape, and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants. . . .

[*Ibid.* (emphasis added).]

*N.J.S.A.* 2C:17–1a provides:

Aggravated arson. A person is guilty of aggravated arson, a crime of the second degree, if he starts a fire or causes an explosion, whether on his own property or another's:

(1) Thereby purposely or knowingly placing another person in danger of death or bodily injury; or

(2) With the purpose of destroying a building or structure of another; or

(3) With the purpose of collecting insurance for the destruction or damage to such property under circumstances which recklessly place any other person in danger of death or bodily injury.

[*Ibid.* ]

*N.J.S.A.* 2C:2–6 provides in pertinent part:

c. A person is an accomplice of another person in the commission of an offense if:

(1) with the purpose of promoting or facilitating the commission of the offense; he

\*       \*       \*       \*       \*       \*       \*       \*

(b) Aids or agrees or attempts to aid such other person in planning or committing it. . . .

[*Ibid.*]

Applying the Code provisions, we are satisfied that a reasonable jury could have found that defendant aided Jenkins in the commission of arson. He knew what Jenkins' intentions were and assisted Jenkins in carrying out those intentions. Defendant stated that he acted as the "look out" to make sure no one was coming while Jenkins went inside with the gasoline can. Defendant explained that he agreed to be the look out because he was "in the drug game" and "was a follower." This evidence adequately supports the necessary finding that defendant gave his approval of the arson and aided and abetted the same. *See State v. Kamienski,* 254 *N.J.Super.* 75, 97, 603 *A.*2d 78 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992). Therefore, denial of defendant's motion for a new trial was proper as the verdict was not a manifest denial of justice under the law. Defendant's convictions on the three counts of felony murder must stand.

Defendant asserts that his sentence of forty-five years with a thirty year parole ineligibility period was manifestly excessive and unduly punitive. In reviewing a sentence, we may not substitute our judgement for that of the trial court, and must uphold a

sentence unless it is "clearly unreasonable" or otherwise represents an abuse of the trial court's discretion. *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989); *State v. Roth,* 95 *N.J.* 334, 362–365, 471 *A.*2d 370 (1984); *N.J.S.A.* 2C:44–7.

The *Roth* criteria to determine whether the sentencing court abused its discretion is as follows:

(a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.

[*Id.* at 364–365, 471 *A.*2d 370.]

Thus, an appellate court should ordinarily affirm the sentence of the trial court, unless the trial court failed to follow the sentencing guidelines, made factual findings not supported by the record, or if the sentence shocks the judicial conscience. *See State v. O'Donnell,* 117 *N.J.* 210, 215–16, 564 *A.*2d 1202 (1989).

The trial court found as aggravating factors: (1) the nature and circumstances of the offense and the role of the actor therein; (3) the risk that the defendant would commit another offense; (6) the extent of defendant's prior criminal record; and (9) the need for deterring the defendant and others from violating the law. *N.J.S.A.* 2C:44–1a. The trial court found no mitigating factors. *N.J.S.A.* 2C:44–1b.

The defendant maintains that the sentencing court erroneously failed to find as mitigating factors: (2) defendant did not contemplate that his conduct would cause serious harm; and (12) the willingness of defendant to cooperate with the law enforcement authorities. *N.J.S.A.* 2C:44–1b. The court discussed these factors and properly concluded that they did not apply.

Defendant waited while Jenkins went to the gas station, and defendant then kept watch for Jenkins while he set the fire. Thus, it is evident that defendant knew what Jenkins had planned and aided him knowing the serious consequences that might

follow. Defendant's alleged willingness to cooperate with the law enforcement authorities was rejected by the court because it appeared that the defendant only cooperated because he thought he would get a reward. Even if the trial court had found this to constitute a mitigating factor, it still would not have changed the overwhelming degree to which the aggravating factors outweighed the mitigating factors. We find no abuse of sentencing discretion. *State v. Ghertler*, 114 *N.J.* 383, 394, 555 *A.*2d 553 (1989); *see also Jarbath, supra*, 114 *N.J.* at 401, 555 *A.*2d 559.

Affirmed.