THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN R. ROBINSON, Appellant.

Third Department, January 30, 1986

122

## APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* for appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), for respondent.

## OPINION OF THE COURT

KANE, J.

At approximately 11:50 A.M. on December 12, 1978, Lettie Pinney, a teller at the Home Savings Bank at 163 Central Avenue in the City of Albany, was handed a manila envelope on which there was a smaller white envelope covered by a yellow withdrawal slip. Printed on the white envelope were the words, "This is a holdup. Your life is in danger. Put 100s, 50s, 20s in bag. *Keep hands in sight at all times.*" The purported customer was later described by Pinney as a man with a mustache in his twenties, over 5½ feet tall, wearing a tan coat, a dark knit cap pulled down over his forehead and a dark scarf around his chin. Upon receipt of the note, Pinney asked "What do you want me to do with this?" and, receiving no reply, she handed it to the teller next to her. Thereupon, the man hastily left the bank. Pinney and the others in the bank spent the next 10 minutes discussing whether what had transpired was a real holdup attempt or merely a hoax. However, the decision was made to call the police and their investigation ensued.

When questioned by police and shown a photographic array which included defendant, Pinney was unable to identify defendant as the perpetrator. A customer in the bank who had noticed the note being passed to Pinney and who described the perpetrator as a man about six feet tall, wearing a dark scarf and a dark colored loose fitting coat, was also unable to make a positive identification. Moreover, still photographs made from the video tape machine filming the activi-

ties at the bank were blurred and of limited value in providing an identification of the man passing the note. However, police investigators did obtain latent fingerprints from the manila envelope and note, which, when compared with known fingerprints of defendant, provided a sufficient basis for a search warrant authorizing a search of defendant's dormitory room at the State University of New York at Albany. The fruits of the search included a box of white envelopes, a maroon scarf, a navy watch cap, black gloves, a blue ski jacket and a pair of work boots.

Defendant was thereafter indicted for one count of attempted robbery in the third degree and, after a jury trial, was convicted of that single count. A crucial issue in the case was the identity of defendant as the perpetrator of the Home Savings Bank attempted robbery. Therefore, the prosecution sought to introduce evidence of a December 5, 1978 robbery of the Central Savings and Loan Association, located at 302 Central Avenue in the City of Albany, to establish the identity of defendant at the Home Savings Bank incident and to prove that the attempted robbery there was not a hoax. Since defendant was not charged with the December 5, 1978 robbery, the court directed a hearing on the admissibility of such evidence pursuant to *People v Ventimiglia* (52 NY2d 350). Following the hearing, the evidence was deemed admissible.

At trial, this evidence included testimony of a teller at Central Savings and Loan Association on December 5, 1978 who, although she was unable to positively identify the perpetrator, described him as a white male, about 5 feet 10 inches tall, medium build, weighing 160 to 170 pounds, with a reddish-brown mustache and wearing a blue ski cap, a navy blue coat and a scarf around his mouth. The perpetrator handed her a manila envelope and standard white envelope on which was printed "This is a holdup! Your *life* is in *danger.* Put 100s, 50s, 20s in bag. Remain calm for your own safety." The teller complied by giving the robber what was later learned to be $1,830, and activated a camera which took pictures of him as he left the bank. In addition, an expert witness qualified in the area of document analysis testified, without contradiction, that the two holdup notes were written by the same person. Further connecting defendant to the uncharged crime was testimony of defendant's girlfriend that she received repayment of a $500 loan from defendant on December 5, 1978, in $20 and $50 bills, that the briefcase used and jacket worn by the perpetrator of the Central Savings and

Loan Association robbery looked like those owned by defendant, and she also identified clothing seized by the police pursuant to the search warrant as belonging to defendant.

The prosecution also attempted to establish defendant's identity at the Home Savings Bank incident by introducing testimony of a fingerprint expert. This expert stated that three latent fingerprints found on the holdup note and one latent fingerprint from the manila envelope used at the Home Savings Bank incident were made by the same fingerprints that appeared on defendant's arrest card. This evidence was contradicted by defendant's expert, who was of the view that he could not make a positive identification from the available evidence.

■ On appeal, defendant offers a multitude of issues seeking reversal of his conviction. Turning first to the issue of identity, we find no error in permitting evidence of the uncharged robbery at Central Savings and Loan Association on December 5, 1978 to be placed before the jury, under proper limiting instructions, for the purpose of establishing the identity of defendant as the perpetrator of the attempted robbery at Home Savings Bank on December 12, 1978. It is well established that "unless the defendant's identity is *conclusively* established, the identity exception set forth in *[People v Molineux,* 168 NY 264] should apply to enable the prosecution to adequately prove the defendant's identity" *(People v Condon,* 26 NY2d 139, 142; emphasis in original). In this case, the alleged conduct in the two crimes is sufficiently unique and identity is a crucial issue. Accordingly, proof of the uncharged crime is probative of the fact that defendant committed the crime charged *(see, People v Beam,* 57 NY2d 241; *People v Allweiss,* 48 NY2d 40). However, defendant's evidence of an uncharged robbery committed at the Bank of New York at 112 State Street in the City of Albany on December 19, 1978, at a time when defendant was incarcerated, is inadmissible to establish that defendant did not commit the crime charged for lack of probative value, and the trial court's rulings on this issue were correct *(see, People v Johnson,* 47 NY2d 785, *cert denied* 444 US 857).

■ A photograph of defendant taken prior to his arrest was properly received in evidence, as it was offered not to bolster the identification of defendant, but to establish defendant's appearance on the date of the attempted robbery by comparing it with the rather blurred video tape reproductions and the physical descriptions given by the various eyewitnesses

*(see, People v Logan,* 25 NY2d 184, 195, *cert denied* 396 US 1020). Moreover, defendant's claim of prejudice is unavailing since the record demonstrates that the photograph was not obtained by police authorities as a result of any criminal activity by defendant.

■ Among other issues raised by defendant is the contention that he was deprived of a fair trial because of media coverage, during this trial, of his arraignment on an unrelated charge at which the press was excluded. Here, we find that the trial court made extensive inquiry of each individual juror and concluded that the jury members were not exposed to any media coverage on any issue that would prejudice them in the performance of their duty. The court took proper precautions and its rulings were an appropriate exercise of its broad discretion in such matters *(see, People v Testa,* 61 NY2d 1008, 1009; *People v Costello,* 104 AD2d 947, 948).

■■ There were numerous issues raised upon the voir dire, including a claim that college students were systematically excluded from the Albany County jury pool. We find this contention to be without merit since college students do not fall into any distinctive group within the meaning of the fair cross section of the community requirement for prospective jurors *(Thiel v Southern Pac. Co.,* 328 US 217, 220; *People v Shedrick,* 104 AD2d 263, 273, *affd* 66 NY2d 1015). Nor do we find error in the trial court's refusal to allow defendant additional peremptory challenges because of the possibility of his being sentenced as a persistent felon *(see, e.g., People v Ramos,* 16 NY2d 700, *affg* 22 AD2d 853; *People v Haney,* 29 AD2d 698), or in its denial of challenges for cause to individual jurors *(see, People v Williams,* 63 NY2d 882, 884).

■ Throughout the course of this two-week trial, there were numerous objections to the rulings of the trial court, including matters related to the conduct of the trial, the admissibility of evidence and the physical layout in the Albany County Courthouse. Defendant, in his *pro se* brief, also argues that he was deprived of the effective assistance of counsel. We find no merit to the contention that adverse rulings or the conduct of the court deprived defendant of a fair trial. On the contrary, in view of the sometimes trying circumstances presented by the vigorous defense and prosecution of this matter, the court fulfilled its responsibility and kept the proceedings within reasonable confines of the issues to be tried *(see, People v Gonzalez,* 38 NY2d 208, 210; *People v Schneider,* 100 AD2d 733).

■ ■ Finally, the trial court was correct in refusing to charge attempted grand larceny in the third degree as a lesser included offense, since it is theoretically possible to commit robbery without committing larceny, as robbery does not require property to be stolen from the person of another, whereas, larceny in the abstract does include such an element *(People v Harris,* 92 AD2d 738). The court's charge with respect to handwriting experts and circumstantial evidence was correct, as was its response to the several requests for further instructions by the jury. Conflicting testimony was resolved by the jury in favor of the People after lengthy consideration of all issues raised by competent and indefatigable counsel. The 20-year-to-life prison sentence imposed by the trial court, after it found defendant to be a persistent felony offender with convictions of rape in the first degree, robbery in the first degree and pleas of guilty to attempted robbery in the third degree and four counts of robbery in the first degree, was not an abuse of discretion.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Judgment affirmed.