# Ivana Trump, Respondent, v Donald J. Trump, Appellant.

First Department, April 16, 1992

APPEARANCES OF COUNSEL

*Jay Goldberg* of counsel *(Judd Burstein* with him on the brief; *Tenzer, Greenblatt, Fallon & Kaplan,* attorneys), for appellant.

*Robert Stephan Cohen* of counsel *(Jonathan W. Lubell* and *Arlene R. Smoler* with him on the brief; *Morrison Cohen Singer & Weinstein,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

The husband appeals from a supplemental judgment which, pursuant to a stipulation of settlement, resolved the wife's action challenging the enforceability of the parties' postnuptial agreement. In their stipulation, the parties, subject to a number of specific modifications not here relevant, explicitly ratified the postnuptial agreement, including a certain confidentiality provision. A proposed supplemental judgment incorporating by reference the postnuptial agreement, as modified by the stipulation of settlement, was thereafter submitted to the court, which, *sua sponte,* without notice to the parties or explanation, excluded the confidentiality provision from incorporation into the supplemental judgment. Since the court's unilateral action in deleting the confidentiality provision was both unjustified and unauthorized, we modify to vacate the deletion.

Married on April 9, 1977, the parties, with the advice of separate counsel, on December 24, 1987, entered into a postnuptial agreement (the Agreement), which superceded three prior agreements dated March 22, 1977, July 24, 1979 and May 25, 1984, respectively. Paragraph 9 (b) of the Agreement set out, in the event of divorce or separation, the parties' rights and obligations, including, *inter alia,* the husband's obligation to pay $350,000 per annum to the wife as maintenance and $10,000,000 in a lump sum within 90 days after entry of a decree of divorce. Paragraph 10 of the Agreement provides: "Without obtaining [the husband's] written consent in advance, [the wife] shall not directly or indirectly publish, or cause to be published, any diary, memoir, letter, story, photograph, interview, article, essay, account, or description or depiction of any kind whatsoever, whether fictionalized or not, concerning her marriage to [the husband] or any other aspect of [the husband's] personal, business or financial affairs, or assist or provide information to others in connection with

the publication or dissemination of any such material or excerpts thereof * * * Any violation of the terms of this Paragraph (10) shall constitute a material breach of this agreement. In the event such breach occurs, [the husband's] obligations pursuant to Paragraph (9) hereof, to make payments or provisions to or for the benefit of [the wife], shall thereupon terminate. In addition, in the event of any such breach, [the wife] hereby consents to the granting of a temporary or permanent injunction against her (or against any agent acting in her behalf) by any court of competent jurisdiction prohibiting her (or her agent) from violating the terms of this Paragraph." Paragraph 12 of the Agreement states: "In the event that an action for divorce is instituted at any time hereafter by either party against the other in any court of competent jurisdiction, the parties hereto agree that they nevertheless shall be bound by all of the terms of this Agreement. To the extent possible and appropriate this Agreement shall be incorporated in the decree to be entered in such action and shall not be merged therein. If there be anything in such judgment or decree inconsistent with any of the terms or provisions of this Agreement, the terms and conditions of this Agreement shall govern and shall survive such decree."

In March 1990, the wife commenced an action, alleging, *inter alia,* that, to the extent the Agreement provides that she has waived her claims to marital property under Domestic Relations Law § 236, it is unconscionable and the product of overreaching and fraud and, thus, unenforceable, and seeking a declaration to that effect. The wife subsequently instituted an action for divorce. Both cases were assigned to the same IAS court, which, without resolving the issue as to the enforceability of the Agreement, on December 12, 1990, granted the wife a judgment of divorce on the ground of cruel and inhuman treatment.

Thereafter, on March 22, 1991, the parties, after extensive negotiations, disposed of the declaratory judgment action by entering into a stipulation of settlement which, except for certain modifications not relevant herein, expressly ratified all the provisions of the Agreement. The stipulation further provided, "[The wife's] acceptance of the check for $10,000,000 tendered herewith on the evening of March 22, 1991 shall constitute the parties' irrevocable acceptance of the terms of this stipulation and any documents executed in connection herewith." The wife withdrew her claims challenging the enforceability of the Agreement and, on May 22, 1991, the

IAS court signed a supplemental judgment incorporating by reference all the terms of the Agreement, as modified by the March 22, 1991 stipulation of settlement, except paragraph 10, which it, *sua sponte* and without explanation or notice to the parties, excluded.

It is well settled that, in the absence of any affront to public policy, parties to a civil dispute have the right to chart their own litigation course. *(T. W. Oil v Consolidated Edison Co.,* 57 NY2d 574, 579-580.) "[C]ourts have long favored and encouraged the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes." *(Mitchell v New York Hosp.,* 61 NY2d 208, 214.) In disposing of such litigation, parties "may stipulate away statutory, and even constitutional rights." *(Matter of New York, Lackawanna & W. R. R. Co.,* 98 NY 447, 453; *see, Matter of Abramovich v Board of Educ.,* 46 NY2d 450, 456, *cert denied,* 444 US 845 [waiver of due process right to a hearing]; *Matter of Sonenberg v Fuller,* 114 AD2d 677 [waiver of due process and equal protection rights].) Of course, given a showing of cause sufficient to invalidate a contract, such as fraud, collusion, mistake or some such similar ground, a court may relieve a party from the consequences of his or her stipulation. *(1420 Concourse Corp. v Cruz,* 135 AD2d 371, 372.)

Quite apart from the latter considerations, the wife contends that in declining to incorporate the confidentiality clause of the Agreement into the supplemental judgment of divorce, the IAS court properly invoked the discretion specifically afforded it by the parties in paragraph 12 of the Agreement. She argues that since the court was bound to incorporate the terms of the Agreement "[t]o the extent possible and appropriate", it was vested with the discretion to refuse to incorporate those provisions it deemed inappropriate. To interpret the phrase "[t]o the extent possible and appropriate" as conferring upon the court the unfettered discretion to pick and choose the terms of the Agreement, as ratified by the stipulation of settlement, it deemed appropriate for incorporation would result in a complete undoing of the settlement and violate the principle that the parties are free to chart their own litigation course. The only reasonable interpretation of the clause is that it authorizes the court, for sound reasons and after notice to the parties, to refuse to incorporate some of the terms of the Agreement. Thus, contrary to the wife's arguments, paragraph 12 itself does not afford the court any

more authority to interfere with the parties' own agreement than the court would have under existing law.

Moreover, and perhaps more important, is the manner in which the IAS court refused to incorporate paragraph 10. Even assuming that the court had a sound basis for refusing to enforce the confidentiality clause, as a matter of procedural due process, the parties were entitled to notice and an opportunity to be heard before the court, *sua sponte,* altered the terms of their agreement. The use of the word "appropriate" in paragraph 12 can only be reasonably interpreted as contemplating that the decision not to incorporate a provision of the Agreement would be discussed and that any attempt to limit the incorporation of any provision would be made to the court on appropriate notice and with an opportunity to be heard. In the absence of any indication that the parties had such notice, it is apparent that the court acted without authority in excluding paragraph 10 from incorporation into the supplemental judgment. Moreover, in the absence of some explanation of the court's refusal to incorporate paragraph 10, we are not in a position to review the merits of its actions.

The wife also advances a substantive argument justifying the court's refusal to incorporate paragraph 10 into the supplemental judgment. She claims that, absent a compelling State interest, the Federal and New York State Constitutions bar a court from issuing a prior restraint barring an individual from ever publishing any statements about a specific subject. Of course, we can only speculate that this was the rationale for the court's actions since, as noted, it gave no explanation as to its reasons. Furthermore, the constitutional prohibition against prior restraint applies only to orders issued by the government. In arguing that a divorce judgment incorporating the terms of a postnuptial agreement is the equivalent of a governmental order, the wife takes a great leap in logic. We reject such a premise.

Nor is there any evidence or indeed any claim that the Agreement was the product of fraud, collusion, mistake, accident, or some such similar ground. While the supplemental judgment was entered in the context of a lawsuit in which the wife had originally claimed fraud and duress, those claims had been withdrawn and the court, by incorporating the Agreement into the judgment, placed its own stamp of approval on its terms, as well as on the wife's withdrawal of her fraud and duress claims.

In any event, even in the absence of the trial court's approval, there is no basis for a fraud or duress claim with respect to paragraph 10 of the Agreement. In commencing an action challenging the validity of the Agreement, the wife sought a declaration that it is unenforceable only to the extent that it provides that the wife has waived her claim to marital property or restricted the rights of the children of the marriage. At no time did she claim that paragraph 10 was the result of fraud or duress. When, on March 22, 1991, the parties entered into a settlement of that action, they agreed to modify certain portions of the Agreement and to ratify the unchanged portions. Thus, the wife twice agreed to abide by paragraph 10: in 1987 when she signed the Agreement and in 1991 when she entered into the stipulation of settlement; she was represented by counsel on both occasions.

Since it is clear that the trial court exceeded its "limited authority to disturb the terms of a separation agreement" *(Kleila v Kleila,* 50 NY2d 277, 283) and paragraph 10 does not, on its face, offend public policy as a prior restraint on protected speech *(see, Snepp v United States,* 444 US 507), we modify to incorporate the terms of said Agreement into the supplemental judgment as agreed to by the parties.

Accordingly, the supplemental judgment of divorce of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered May 29, 1991, should be modified, on the law, to delete therefrom the exception of paragraph 10 of the December 24, 1987 postnuptial agreement from incorporation therein and, except as thus modified, affirmed, without costs or disbursements.

Motion by plaintiff-respondent to strike statements of alleged fact in appellant's brief is denied.

CARRO, ROSENBERGER, WALLACH and RUBIN, JJ., concur.

Supplemental judgment of divorce of the Supreme Court, New York County, entered May 29, 1991, is modified, on the law, to delete therefrom the exception of paragraph 10 of the December 24, 1987 postnuptial agreement from incorporation therein and, except as thus modified, affirmed, without costs or disbursements.

Motion by plaintiff-respondent to strike statements of alleged fact in appellant's brief is denied.