[650 NYS2d 894]

JOHN R. ROBINSON, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 78447.)

Third Department, December 12, 1996

## APPEARANCES OF COUNSEL

*Beldock, Levine & Hoffman, L. L. P.,* New York City *(Myron Beldock, Melvin L. Wulf* and *Jonathan S. Abady* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Frank K. Walsh* and *Peter G. Crary* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

On December 12, 1978 at approximately 11:50 A.M., someone attempted to rob a branch of the Home Savings Bank in the City of Albany. Claimant, a student at the State University of New York at Albany (hereinafter SUNY Albany), was charged with the crime. Following a jury trial in County Court, defendant was convicted of attempted robbery in the third degree and sentenced as a persistent felony offender to a prison term of 20 years to life. The conviction was affirmed by this Court *(People v Robinson,* 114 AD2d 120) but reversed on further appeal to the Court of Appeals *(People v Robinson,* 68 NY2d 541). A new trial resulted in a verdict of not guilty and claimant's release from custody on May 4, 1987.

On August 3, 1987, claimant commenced this action for unjust conviction and imprisonment under Court of Claims Act § 8-b seeking damages for his 8 1/2-year incarceration. Trial was conducted before Judge Condon Lyons on various days between May 1991 and October 1992. On the issue of whether claimant committed any of the acts charged in the underlying accusatory instrument *(see,* Court of Claims Act § 8-b [5] [c]), claimant testified that at the time of commission of the attempted robbery he was in his SUNY Albany dormitory room working on a research paper. He also testified that between approximately 11:30 A.M. and 12:15 P.M. on December 12, 1978, his roommate, Andres Gonzalez, and another SUNY Albany student, Raymond Marrero, were also present in his room.

Claimant called Gonzalez and Marrero as witnesses. Each testified that he could no longer recall the events of December 12, 1978. Even after reading portions of the transcript of the testimony given at claimant's 1979 criminal trial, Marrero was merely able to state that he saw claimant and Gonzalez in their dorm room on December 12, 1978 and Gonzalez could only recall "small segments" of that day. Neither could fix the day's events in time. Contending that the witnesses' recollection could not be refreshed, claimant sought admission of, as

here relevant, the transcript of the 1979 trial testimony of Gonzalez and Marrero on the basis of the "prior testimony exception to the hearsay rule", which claimant contended was a matter of common law related to but broader than CPLR 4517, and as past recollection recorded. Ultimately, the Court of Claims granted the application, with no statement of the ground relied upon. The prior testimony so received bolstered claimant's alibi, Gonzalez and Marrero each having testified that they were present with claimant between 11:30 A.M. and 12:15 P.M. on December 12, 1978.

Unfortunately, Judge Lyons died in November 1993, subsequent to the conclusion of the trial but prior to rendering a decision. By written stipulation, the parties agreed that the action be assigned to another Judge of the Court of Claims for determination upon the record developed before Judge Lyons. In March 1995, Presiding Judge Donald Corbett, Jr. rendered a decision in favor of the State dismissing the claim because of claimant's failure to satisfy his burden of establishing by clear and convincing evidence his unjust conviction and imprisonment (*see*, Court of Claims Act § 8-b [1], [5]). In so deciding, Presiding Judge Corbett specifically questioned the credibility of Gonzalez and Marrero and accordingly discounted their testimony, both at the time of trial before the Court of Claims and at the time of the 1979 criminal trial. Claimant appeals from the judgment entered thereon.

We affirm. In order to recover for unjust conviction and imprisonment under Court of Claims Act § 8-b, claimant was required to prove by clear and convincing evidence that (1) he was convicted of one or more felonies or misdemeanors, sentenced to a term of imprisonment and served all or a part of the term, (2) his conviction was reversed or vacated, a new trial was ordered and he was found not guilty at the new trial, (3) he did not commit any of the acts charged in the accusatory instrument, and (4) he did not cause or bring about his own conviction (Court of Claims Act § 8-b [5] [a]-[d]). Here, the parties stipulated to facts satisfying the first two elements and it is essentially undisputed that, if credited, the alibi testimony of Gonzalez and Marrero given at claimant's 1979 trial satisfied the remaining elements.

In that connection, it is claimant's primary contention that once the prior testimony of Gonzalez and Marrero was received in evidence at the trial before the Court of Claims, the credibility of those witnesses and the veracity of their testimony, presently and at the 1979 criminal trial, was conclusively

established. We disagree. In our view, that premise evinces a fundamental misunderstanding of the distinction to be drawn between the admissibility of evidence, on the one hand, and the weight to be given it by the trier of fact, on the other. Notably, claimant's cited references to the " 'maximum guarantee of trustworthiness' " of prior testimony (*Fleury v Edwards*, 14 NY2d 334, 339, quoting 2d Preliminary Report of Advisory Comm on Prac and Pro, 1958 NY Legis Doc No. 13, at 265) and " 'guarantee of correctness' " of past recollection recorded (*People v Raja*, 77 AD2d 322, 326, quoting *Iannielli v Consolidated Edison Co.*, 75 AD2d 223, 230) relate not to the weight to be afforded this species of evidence, but (in contrast to evidence subject to the hearsay rule) the justification for its admission in the first instance. In fact, if, as claimant now posits, receipt of the prior alibi testimony required that the evidence be unconditionally accepted and credited, there would have been nothing for consideration by the trier of fact.

We are similarly unpersuaded that, because he did not see the witnesses or hear the proof, Presiding Judge Corbett was precluded from making credibility determinations. Upon the untimely death of Judge Lyons, the parties were faced with the prospect of retrying the action (*see*, 28 NY Jur 2d, Courts and Judges, § 88, at 158). As an alternative, however, they were permitted to and did "chart their own course" (*see, e.g., Ramsey v Ramsey*, 226 AD2d 989; *General Motors Acceptance Corp. v Gegzno*, 225 AD2d 828, *mot to dismiss appeal granted* 88 NY2d 1017; *Trump v Trump*, 179 AD2d 201, *appeal dismissed* 80 NY2d 892, *lv denied* 80 NY2d 760) by permitting another Judge of the Court of Claims to decide the factual questions involved in the action and the inevitable credibility issues underlying them. "In disposing of * * * litigation, parties 'may stipulate away statutory, and even constitutional rights' " (*Trump v Trump, supra*, at 204, quoting *Matter of New York, Lackawanna & W. R. R. Co.*, 98 NY 447, 453). Having consented to the submission of the disputed factual issues to Presiding Judge Corbett for his determination, claimant will not now be heard to complain that the Judge exceeded his powers, even if his credibility determinations with respect to Gonzalez and Marrero were somewhat at odds with Judge Lyons' decision to admit their prior testimony (*see, People v Raja, supra*, at 327).

Claimant's remaining contentions have been considered and found to lack merit.

MIKOLL, J. P., CREW III, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the judgment is affirmed, without costs.