THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
TONIN RAJA, Appellant.

Second Department, November 24, 1980

### APPEARANCES OF COUNSEL

*Bronstein & Davis (Jay J. Davis* on the brief), for appellant.

*Patrick Henry, District Attorney (Michael T. Cornacchia, III* of counsel), for respondent.

OPINION OF THE COURT

WEINSTEIN, J.

Late in the evening of September 7, 1978, Suffolk County police officers responded to a report of a suspicious vehicle parked on a residential street in Smithtown. Upon arriving at the scene, the officers found the defendant Tonin Raja sitting in a parked automobile. In the car with him were Gloria Perez, his girlfriend (by time of trial, his fiancée), and Olindo Caporale. The officers also observed one John Brecevich sitting in a van parked nearby. The officers made some preliminary inquiries as to these individuals' purpose in being where they were.

A detective spotted two handguns on the lawn of a residence some 8 feet from the car in which Raja, Perez and Caporale were sitting. The officers thereupon took all four individuals into custody.

Raja was tried on a charge of criminal possession of a weapon in the third degree. The only direct evidence offered at trial to connect Raja with possession of the handguns found on the lawn were written, signed statements given to the police the morning after the arrest by Perez and Brecevich, and admitted at trial as exhibits. The contents of these statements were highly inculpatory as to Raja. Perez stated that on the night in question, the defendant "had a brown and black gun with him. It was tucked in his belt on the left side." Brecevich said "Olindo and Tonin both had guns with them in the car. I think one was a revolver and one an automatic * * * I have been shown two guns by Det. Heinssen, one revolver and one brown automatic. Both of the guns * * * seem to be the guns that Olindo and Tonin had when we left the City." Raja was ultimately convicted of the crime charged.

Since the propriety of the court's ruling allowing these statements to be admitted is the central issue on this appeal, it would be appropriate to set forth further facts concerning the circumstances of their admission. Gloria Perez testified on direct examination that she did not recall seeing any guns on the night of September 7, 1978. She was then shown the written statement she gave to the police, but after reading it, stated that it did not refresh her recollec-

tion. She admitted that she answered the questions upon which the statement was based, that she intended those answers to be accurate and honest at the time, and that she signed the statement twice and initialed it six times. However, she maintained that she never actually read it; rather, her testimony was that she was "very upset" at the time, and that she "was told that if [she] signed it, that [she] could go home and not stay in jail. That's why [she] did it." Subsequently, during cross-examination, Ms. Perez maintained that she did not know whether the statement was indeed accurate, and that although she recognized her signature, she did not recall signing the statement.

At this point, the court orally announced certain findings of fact and rulings of law: "that she did make this writing; that she signed it, and she initialed it; that she said it was true at the time, and that now she has no present recollection of the events, but you can still show it to her for the purpose of refreshing her recollection * * * and then following that, if she doesn't, then you can mark it as a Court Exhibit * * * and you can read it to the jury." After Perez again testified that the statement did not refresh her recollection, but that her answers, upon which the statement was based, were truthful and honest to the best of her knowledge, the statement was admitted and read to the jury.

The circumstances surrounding the admission of Brecevich's statement were not substantially different. He also testified that he did not recall seeing guns on the night in question, and after reading his statement, stated that it did not refresh his recollection. However, he admitted signing the statement, which he "imagine[d]" to be an accurate and honest statement of what he knew at the time. He stated that one factor that induced him to sign the statement was the threat of prosecution if he did not sign it. His statement was also ruled admissible, and read to the jury.

■ At this juncture, it would be well to review the pertinent legal principles upon which the disposition of this appeal must turn. If a witness, not necessarily a party to an action, has made, prior to trial, a written or oral statement contrary to his testimony at trial, there are essentially two devices whereby the earlier statement may be

introduced at trial without running afoul of the hearsay rule. The less complex method is simply to introduce the earlier statement as a prior inconsistent statement (see *People v Di Napoli*, 27 NY2d 229; 65 NY Jur, Witnesses, § 74). However, when this procedural route is chosen, the statement may be used solely to impeach the credibility of the witness; it may not be offered as substantive proof of the truth of its contents (see *People v Freeman*, 9 NY2d 600; *Matter of Roge v Valentine*, 280 NY 268). In the case at bar, the statements of Perez and Brecevich were used as proof, indeed, the only direct proof of Raja's commission of a felony; clearly, then, they cannot be classified as mere prior inconsistent statements. Rather, their admissibility will be determined by application of the more demanding rules associated with the concept of past recollection recorded.

The exact formulation of the rules regarding past recollection recorded has been stated in many different ways and by many different authorities (see 3 Wigmore, Evidence [Chadbourn rev], §§ 744-748; 22 NY Jur, Evidence, § 507; Richardson, Evidence [Prince, 10th ed], §§ 469-473; 1 Frumer-Biskind, Bender's New York Law and Proof, § 26.05, subd [1]). The principle of past recollection recorded has been part of the common law of this State for well over a century (see *Cole v Jessup*, 10 NY 96; *Halsey v Sinsebaugh*, 15 NY 485; *Howard v McDonough*, 77 NY 592). Essentially, the principle is as follows: when a witness is either unable or unwilling to testify as to the contents of a memorandum, written by him or at his direction prior to trial, the memorandum may be shown to the witness. If his memory is thereby refreshed, he may testify orally to its contents, and the memorandum itself retains no value as evidence (this is commonly referred to as "present recollection revived"). If, however, even after reading the memorandum, the witness remains unable or unwilling to testify as to its contents, the memorandum itself is admissible as substantive evidence of the truth of its contents, provided that otherwise competent testimony establishes that (1) the witness once had knowledge of the contents of the memorandum, (2) the memorandum was prepared by the witness, or at his direction, (3) the memorandum was prepared when

the knowledge of the contents was fresh in the mind of the witness, and (4) the witness intended, when the memorandum was made, that it be accurate. The rule was succinctly stated by this court in *People v Caprio* (25 AD2d 145, 150, affd 18 NY2d 617), in the following terms: "The rule of past recollection recorded may be simply stated. When a witness is unable to testify concerning facts recited by or through him in a memorandum, the memorandum is admissible as evidence of the facts contained therein if he observed the matter recorded, it was made contemporaneously with the occurrence of the facts recited and the witness is able to swear that he believed the memorandum correct at the time made."

In the case at bar, there is no dispute as to the satisfaction of most of these requirements. Both Perez and Brecevich expressed their inability to remember seeing guns on the night in question, even after their statements were shown to them. Both admitted that they had personal knowledge of the events of that September 7, that the memoranda were prepared a few hours after the police arrived, and that they were based on the witnesses' own answers to questions posed by police officers. Indeed, both witnesses admitted signing their respective statements. The crucial question on this appeal, then, is whether the only remaining requirement was satisfied; that is, whether the memoranda were, at the time they were made, intended and believed by their makers to be true and accurate accounts of what transpired, or whether they were executed under threats of prosecution or other circumstances that would tend to negative their reliability.

To be sure, the requirement of trustworthiness is not to be taken lightly. "Like most exceptions to the hearsay rule, the doctrine of past recollection recorded is grounded on a guarantee of correctness. During the formative period of the rule in this State, the courts often noted that the willingness to permit the introduction of a record should be directly linked to the apparent trustworthiness of that record." *(Iannielli v Consolidated Edison Co.*, 75 AD2d 223, 230; see, also, *Brown v Provident Loan Soc. of N.Y.*, 282 NY 453; *Brown v Western Union Tel. Co.*, 26 AD2d 316.)

Turning, accordingly, to the facts before us, we are confronted with a factual question of trustworthiness regarding which both the People and the defendant can find support for their positions. The defendant can point to the allegations of threats of prosecution made by both witnesses in explaining why they signed their respective statements. Perez testified that she never actually read her statement; Brecevich was not asked at trial whether he read his. Perez testified that she was "very upset" when she made the statement, and did not know whether the statement was accurate or not. On the other hand, Perez did testify, at two points during the trial, that she intended that the answers she gave the police, upon which her statement was based, be accurate, truthful, and honest to the best of her knowledge. And Brecevich "imagine[d]" that his answers were likewise accurate and honest. The court, satisfied that sufficient guarantees of trustworthiness were present, received both statements into evidence.

The deference ordinarily to be afforded on appeal to factual determinations of a trier of fact (in this instance, the Trial Judge), due to his having been able to see the witnesses in person and evaluate their demeanor and other factors bearing on credibility which do not appear in the record on appeal, is well established (cf. *People v Washington*, 51 NY2d 214). This deference is to be afforded to no less an extent when the issue is trustworthiness of a memorandum of past recollection recorded. This court, in *People v Caprio* (25 AD2d 145, 151, *supra*), went so far as to state: "When passing upon preliminary questions of fact in determining the admissibility of evidence, a trial court is not bound to accept the uncontradicted testimony of a witness. A trial court observes a witness, hears his testimony and therefore is in a special position to evaluate and integrate that evidence with other facts before it." Indeed, no less an authority than Wigmore couched this principle in even more extreme terms when he concluded, with respect to the trial court's finding of trustworthiness in such instances, that "[t]he trial court's discretion should be allowed to control * * * And a ruling of admission should seldom, if ever, be deemed an error worth noticing on appeal" (3 Wigmore, Evidence [Chadbourn rev], § 755, p 125).

This is not to say that a trial court is afforded unbridled latitude in allowing any memorandum of past recollection recorded, no matter how untrustworthy, to be admitted. Its ruling in favor of admission will be deemed reversible error when, for instance, a memorandum made by a 13-year-old girl is admitted at a trial 12 years later, during which trial the witness who allegedly made the memorandum states unequivocally that she has absolutely no recollection of either making the statement or of the incident to which it refers (see *Brown v Western Union Tel. Co.*, 26 AD2d 316, *supra*). Likewise, it is reversible error to admit, on behalf of a defendant, an unsigned memorandum which was allegedly made by an individual working on behalf of defendant's insurer, and which was deliberately calculated to circumvent a statute (see *Iannielli v Consolidated Edison Co.*, 75 AD2d 223, *supra*). To be sure, this court retains the authority to right an erroneous factual ruling.

But in the case before the court, such an erroneous factual ruling was not rendered. Indeed, from the record before us, we can find ample support for the court's decision which, we believe, was the correct one. Gloria Perez, at the time of the alleged crime, lived with defendant as his girlfriend; by the time of the trial, she was his fiancée. The trial took place less than seven months after the night in question, and Perez' memory as to all details of her statement, other than the presence of the guns, was good. In view of Perez' motive to lie on the stand, given her special relationship to defendant, and all the other attendant circumstances, we cannot say that the ruling admitting her statement as a memorandum of past recollection recorded was so clearly erroneous as to require reversal on appeal.

The record is less developed as to the circumstances surrounding the admission of Brecevich's statement, but again, nothing therein persuades us that a reversal is necessary on that ground. Brecevich stated under oath that he "imagine[d]" that the answers he gave to the policemen were accurate and honest. He, like Perez, was a friend of the defendant, whom he may have wished to help avoid conviction by lying on the stand as to his recollection. We hold that Brecevich's statement was properly admitted into evidence.

Accordingly, since the trial court could reasonably have found that both statements were sufficiently trustworthy to warrant their admission as memoranda of past recollections recorded, the judgment should be affirmed.

HOPKINS, J. P., RABIN and COHALAN, JJ., concur.

Judgment of the Supreme Court, Suffolk County rendered May 23, 1979, affirmed, and case remitted to the Supreme Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5).