OPINION OF THE COURT
Hancock, Jr., J.
Defendant was tried before a jury on one indictment and convicted of separate crimes involving two different victims: i.e., rape and sodomy of Clara B. and attempted rape and sexual abuse of Elizabeth G. In defendant’s appeal of the Appellate Division’s affirmance of his convictions, we address two issues: (1) on the rape and sodomy counts, whether the trial court erred in admitting — under the hearsay exception for a past recollection recorded — a police officer’s phone message with a license plate number allegedly belonging to defendant’s car; and, (2) on the attempted rape count, whether the court erred in denying defendant’s request for a jury charge on the affirmative defense of renunciation. For the reasons stated hereinafter, we hold: (1) that admission of the phone message as a past recollection recorded was improper and that that error, coupled with the erroneous admission of an uncertified copy of defendant’s car registration, warrants a reversal and a new trial; and, (2) that the court’s denial of defendant’s request for a renunciation charge was correct.
I
On February 24, 1987, a man forced his way into Clara B.’s apartment in the Bronx and raped and sodomized her at *6 gunpoint. On March 2, 1987, a man sexually abused and attempted to rape Elizabeth G. at knifepoint in her apartment, also in the Bronx. Detective Thomas Connelly arrested defendant on March 13, and each victim identified him as her attacker at the police station in separate lineups. A Grand Jury subsequently indicted defendant for these and other crimes.
At trial each complainant again identified defendant and the prosecution adduced other evidence linking him to the scene of each crime. Defendant testified and denied any involvement in either crime. After defendant was found guilty but before sentencing he pleaded guilty to other rapes and attempted rape charges with the understanding that the sentences for these charges would be concurrent with and no longer than the sentences to be imposed for the trial convictions.
The Appellate Division affirmed defendant’s convictions, holding that: (1) the phone message with the license plate number was admissible as a past recollection recorded because the observer and transcriber each testified "regarding the accuracy of their respective roles”; and, (2) the trial court "properly refused to instruct the jury on the affirmative defense of renunciation since there was no reasonable view of the evidence that defendant manifested voluntary and complete renunciation of his purpose to rape Elizabeth G.” The court also concluded that the uncertified record of defendant’s automobile registration was improperly admitted, but that the error was harmless. It rejected defendant’s argument that he had been improperly denied his right to have the complainants testify at a pretrial suppression hearing (174 AD2d 430). A Judge of this Court granted defendant leave to appeal.
II
Evidence pertaining to past recollection recorded
Faye Lopez — the daughter of one of Ms. B.’s neighbors— testified that on March 10, 1987, approximately two weeks after Ms. B. was attacked, she was at her mother’s apartment. She and her mother saw and heard a man knocking at Ms. B.’s door. The man was asking for "Cindy”, the fake name which Clara B. testified she had given the rapist. When no one answered, the man left and got into a car. Ms. Lopez testified that she saw the license plate number, wrote it down "with [her] mother”, and then called the police and gave them the *7 number. Her mother, however, testified that it was she who got the plate number while her daughter was calling the police. Ms. Lopez tried unsuccessfully to reach Detective Connelly at the Bronx precinct. She talked instead to Detective Valentin who took the message, including the number of the license plate. The next day, Detective Connelly received the phone message containing the license number "567-TBP”. A computer check revealed that a vehicle with a similar plate number "5967-TBP” was registered to defendant. Two days later — linked to the crime scene as the owner of the car— defendant was arrested.
A year later when the case came to trial, Ms. Lopez had lost the piece of paper on which she had written the license plate information. She could not remember it. She testified, however, that to the best of her recollection, the license plate number she gave to Detective Valentin was the one she saw on the car. Detective Valentin testified that he recognized the message to be in his handwriting, but that he could not recall taking the message or writing it down. He stated, however, that it was his habit to take messages as accurately as he possibly could. Based on the combined testimony of Detective Valentin and Ms. Lopez, the trial court, over objection, admitted the memorandum containing the license information under the hearsay exception for a past recollection recorded. Also over objection, the court admitted an uncertified Department of Motor Vehicles record of defendant’s automobile registration containing his license plate number.
Evidence pertaining to the requested renunciation charge
The only relevant evidence appears in the testimony of the victim Elizabeth G. As she recites the events, a man forced his way into her apartment on March 2, 1987. Threatening her with a knife, he made aggressive sexual advances. Because of her fear of the knife, she sought to dissuade him — rather than fighting him or screaming — by "trying to make him believe that he could be [her] boyfriend and he did not have to do it this way”. Despite these efforts, he carried her into the bedroom where he continued to touch and rub himself against her and tried to pull down her pants. After Ms. G. "told him he could come to [her] house anytime”, he relented and they "went back to the living room and started talking”. He took off the surgical gloves he had been wearing during the attack, saying that he was "not going to be needing these anymore”.
*8 The man apparently accepted Ms. G.’s suggestion that they "go buy a bottle” to celebrate "getting to know each other”. When they stepped into the hallway outside the apartment on their way "to buy the bottle”, the man had ahold of her upper arm. She slipped back through the door, which was slightly ajar, stating that she had forgotten her pocketbook. The door closed and locked automatically behind her and she stayed inside. As she put it on cross-examination, "I ducked from under his arm and the door closed”. The man knocked on the apartment door and tried to get her to open it by telling her to "get him a tissue”. She refused to let him back in, called the police, and the man left. At the close of the evidence, the court denied defense counsel’s request for a jury charge on renunciation regarding the attempted rape charge.
Ill
We address first the question of the admissibility of the phone message containing the license plate number of defendant’s car under the doctrine of past recollection recorded. Under this doctrine — which has a long history of acceptance in New York (see, e.g., Russell v Hudson Riv. R. R. Co., 17 NY 134; 3 Wigmore, Evidence § 738 [Chadbourn rev 1970]) — a memorandum made of a fact known or an event observed in the past of which the witness lacks sufficient present recollection may be received in evidence as a supplement to the witness’s oral testimony (see generally, Richardson, Evidence §§ 469, 473 [Prince 10th ed]; 3 Wigmore, Evidence § 734 [Chadbourn rev 1970]). The requirements for admission of a memorandum of a past recollection are generally stated to be that the witness observed the matter recorded, the recollection was fairly fresh when recorded or adopted, the witness can presently testify that the record correctly represented his knowledge and recollection when made, and the witness lacks sufficient present recollection of the recorded information (see, Russell v Hudson Riv. R. R. Co., 17 NY 134, 139-140, supra; People v Caprio, 25 AD2d 145, 150, affd 18 NY2d 617; People v Fields, 151 AD2d 598, 599; see also, People v Dillenbeck, 115 AD2d 331; People v Raja, 77 AD2d 322, 325-326; see generally, 3 Wigmore, Evidence §§ 745, 746 [Chadbourn rev 1970]; Richardson, Evidence § 469 [Prince 10th ed]; McCormick, Evidence § 299 [3d ed]).
The rationale for the doctrine is that the recorded information is essential to further the truth-seeking function of the *9 trial proceeding and that when the conditions for admission have been met, there is sufficient assurance of the accuracy of the recordation and its trustworthiness (see, Russell v Hudson Riv. R. R. Co., supra, at 140; Iannielli v Consolidated Edison Co., 75 AD2d 223, 228, 230; People v Raja, supra, at 325-327; 3 Wigmore, Evidence § 755 [Chadbourn rev 1970]). As we stated in Halsey v Sinsebaugh (15 NY 485): "To exclude such a record, when shown to have been honestly made, would be to reject the best and frequently the only means of arriving at truth” (id., at 488). When such a memorandum is admitted, it is not independent evidence of the facts contained therein, but is supplementary to the testimony of the witness. The witness’ testimony and the writing’s contents are to be taken together and treated in combination as if the witness had testified to the contents of the writing based on present knowledge (see, Russell v Hudson Riv. R. R. Co., supra, at 140; Richardson, Evidence § 473 [Prince 10th ed]). Admission of the memorandum is a matter for the exercise of the court’s discretion in determining whether the proponent has made a sufficient showing of the accuracy of the recording and its reliability (see, People v Caprio, 25 AD2d 145, 151-152, supra; People v Raja, supra, at 327; 3 Wigmore, Evidence § 755 [Chadbourn rev 1970]).
The above requirements are most easily met where the witness testifies about a memorandum in which the witness personally recorded information based on his or her observations. Memoranda have also been admitted based on the observations of one person which were transcribed by another where from their combined testimony the court could be satisfied that what was written was an accurate transcription of what was observed or then known (see, e.g., Clark v National Shoe & Leather Bank, 164 NY 498, 503; see generally, 3 Wigmore, Evidence § 748 [Chadbourn rev 1970]; Richardson, Evidence § 469 [Prince 10th ed]). There are limits, however, to the admission of such jointly established records of past recollection. In Peck v Valentine (94 NY 569), the Court held that admission of a "memorandum not in its nature original evidence of the facts recorded, and not verified by the party who made the original and knew the facts, would open the door to mistake, uncertainty and fraud” (id., at 573 [emphasis added]).
In this case, the requirement that the memorandum must have been made or adopted while the recollection was fairly fresh, poses no obstacle to admission. The testimony of Ms. *10 Lopez and Detective Valentin established that her transmission of the message containing the plate number and his receipt and recording of it all occurred immediately after Ms. Lopez’s observation.[1] Nor does the requirement of the witness’ inability to recall the memorandum’s contents present a problem. Ms. Lopez testified that she could not remember the number. Thus, the critical question remaining is whether the proof adequately assured that the phone message transcribed by Detective Valentin correctly represented the information observed and transmitted by Ms. Lopez.
Reduced to its essentials, the testimony of Ms. Lopez and Detective Valentin comes to this. Ms. Lopez stated she transmitted to Detective Valentin what she believed to be her accurate observation of the license plate number. Detective Valentin had no recollection of that transmission or of having made the memorandum. Thus, he could not state that what he wrote down was what he had been told (see, Brown v Provident Loan Socy., 282 NY 453, 456; Hodas v Davis, 203 App Div 297; Richardson, Evidence § 471, at 462 [Prince 10th ed]; cf., United States v Booz, 451 F2d 719 [3d Cir], cert denied 414 US 820 [memorandum admissible if recorder can verify accuracy of transcription]; Swart v United States, 394 F2d 5 [9th Cir] [same]). He could state only that because the memorandum was in his handwriting he must have taken the message and that it was his habit to take messages as accurately as possible. There is no proof that Detective Valentin read back the plate number to Ms. Lopez for her verification or that she had any knowledge that he had received and recorded her message accurately (see, Peck v Valentine, 94 NY 569, 573, supra; see also, People v Fields, 151 AD2d 598, 599, supra; People v Ramirez, 112 AD2d 326).
Thus, there can be no more than supposition on the critical question of whether what was observed and sent corresponded with what was heard by the recorder and written down. Without some verification by the observer-sender that what was recorded accurately reflected her observations *11 when made, the record of those observations should not have been received against defendant as substantive incriminating evidence. Contrary to the dissent, this is not an "unnecessarily rigid formula for admissibility” (dissenting opn, at 16). It is rather the application of the basic and sensible rule of evidence that before a record of observations made in the past by someone other than the observer can be received in evidence, there should be some showing that the recording was accurately made.[2] We conclude that these facts taken together show that the memorandum lacked sufficient assurances of accuracy and trustworthiness. It was error, therefore, to admit the license plate number as a memorandum of Ms. Lopez’s past recollection.[3]
We reject the People’s alternative argument that any error in admitting the phone message with the license plate number was harmless. That error must be viewed in conjunction with the trial court’s error in admitting an uncertified Department of Motor Vehicles record of defendant’s automobile registration (see, CPLR 4518 [c]). These two items provided a critical link between defendant and the crime by establishing that the car driven by the man — believed by the witnesses to be the person who had raped Clara B. — was owned by defendant. In cross-examining defendant, the prosecutor stressed the correspondence between what was written on the memorandum and the license number of defendant’s car. During summation, he emphasized that the license plate *12 number was "very strong evidence” that defendant was the rapist. And he urged the jury to ask to see the phone message during their deliberations which they did. Finally, the trial court, before admitting the phone message, characterized it as "an important piece of evidence.” Viewing the record as a whole, we conclude that the erroneous admissions of the license plate number and defendant’s car registration were not harmless (see, People v Crimmins, 36 NY2d 230, 241).
IV
We turn to the question of the renunciation charge. According to defendant, the evidence shows that he voluntarily and completely abandoned any intention of carrying out the design of raping Elizabeth G. Thus, he argues, the trial court erred in denying his request to charge renunciation as an affirmative defense to the attempted rape count (Penal Law § 40.10 [3], [5]).[4] As defendant properly reminds us, a court must charge the jury on any claimed defense that is supported by a reasonable view of the evidence which the court must assess in the light most favorable to the defendant (see, People v Butts, 72 NY2d 746, 750; People v Padgett, 60 NY2d 142, 144-145). Nevertheless, on the record before us we conclude that the court correctly denied defendant’s request.
New York’s first recognition of renunciation as a statutory defense came in 1965 when the Legislature enacted the present Penal Law (L 1965, ch 1030, eff Sept. 1, 1967) as part of its over-all revision of the criminal statutes following the American Law Institute’s adoption of the Model Penal Code in 1962. Penal Law § 40.10 (3) and (5), like other State enactments *13 patterned on the Model Penal Code, specifies that renunciation should be a defense to an attempted crime (see, People v Reynolds, 156 AD2d 597; People v Johnston, 87 AD2d 703, 704; Rodriguez v Smith, 428 F Supp 892, 895 [SD NY]). In this particular, the Model Code and the statutes derived from it differ from the traditional common-law view which holds that it is logically impossible for someone to renounce a crime which is already completed (see, Model Penal Code § 5.01 [4]; 2 LaFave and Scott, Substantive Criminal Law § 6.3 [b] [2], at 54-57; Moriarty, Extending the Defense of Renunciation, 62 Temple L Rev 1, 7-11).
The Model Code approach is that — so long as the criminal design is completely and voluntarily abandoned before it is carried out — it is not illogical to permit the defense even though the events have progressed to the point where a criminal attempt has been committed. Various policy reasons are given for including renunciation as a defense for an attempted crime (see, e.g., Model Penal Code and Commentaries, Part I, § 5.01, comment 8, at 360; Hoeber, The Abandonment Defense to Criminal Attempt and Other Problems of Temporal Individuation, 74 Cal L Rev 377, 393-402). The general rationale, however, stresses that for the defense to apply the "object crime must in fact have been prevented” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 40.10, at 137 [emphasis added]) and that excusing the defendant from attempt liability in return for the crime’s prevention is seen as a net benefit to the community (id.). Moreover, encouraging actors to desist is said to diminish the risk that the crime will take place (see, 7 Zett, New York Criminal Practice ]f 63.9 [1]).
For the defense of renunciation to be effective, it must be shown that the object crime was abandoned "under circumstances manifesting a voluntary and complete renunciation of [the] criminal purpose” (Penal Law § 40.10 [3]). To be "voluntary”, as that term is used in the statute, the abandonment must reflect a change in the actor’s purpose or a change of heart that is not influenced by outside circumstances (see, Model Penal Code and Commentaries, op. cit., at 356); i.e., the abandonment cannot be motivated in whole or in part by a belief that circumstances exist that increase the probability of detection or apprehension or make more difficult the completion of the crime (Penal Law § 40.10 [5]). To be "complete”, the abandonment must be permanent, not temporary or contingent, not simply a decision to postpone the criminal conduct *14 until another time or to transfer the criminal effort to another victim (id.; see, Model Penal Code and Commentaries, op. cit., at 358; 7 Zett, op. cit, § 63.9 [2] [a]). It is essential that the defendant demonstrate that the claimed renunciation resulted in avoidance of the crime (Penal Law § 40.10 [3]); in other words, that by abandoning the criminal enterprise he prevented it from being completed (see, 7 Zett, op. cit., § 63.9 [2] [a]; Donnino, op. cit., at 137; People v Johnston, 87 AD2d 703, 704, supra). Thus, for example (see, Model Penal Code and Commentaries, op. cit., at 360), if the actor fires at the intended victim and misses he has no defense to the charge of criminal attempt. What resulted in the crime’s avoidance was the actor’s poor aim, not his abandonment of the criminal purpose.
As a practical matter, defendant’s argument that he should have had the benefit of a renunciation charge is in some respects impaired in this case because his primary contention is that he was not involved in the crime at all. Thus, there could be no direct evidence on the critical question of whether defendant intended to make a complete abandonment of the criminal enterprise. To be sure, defendant’s entitlement to the renunciation charge is not defeated by reason of his denial of involvement in the crime (see, People v Butts, supra, at 748-749). On this record, however, we must decide whether the charge was warranted on no more than the victim’s unrebutted testimony.
Arguably, there is enough for the jury to have concluded that defendant voluntarily stopped the sexual assault, apparently in response to the victim’s intimations concerning future gratification. There is no reasonable view of the proof, however, that the abandonment of the criminal enterprise was complete (Penal Law § 40.10 [5]) or that the culmination of the intended rape was avoided by defendant’s abandoning the criminal effort (Penal Law § 40.10 [3]; see, 7 Zett, op. cit., § 63.9 [2] [a]). On these critical issues we have only the testimony of Ms. G. that when she and defendant left the apartment defendant was holding her by the arm, that she managed to duck from under his arm and get back through the apartment door which closed and locked automatically behind her, and that defendant thereafter attempted to regain entry into the apartment by knocking on the door and asking for a tissue. This evidence hardly evinces a complete abandonment by defendant of his criminal purpose. On the contrary, it strongly suggests that the criminal enterprise was continuing and that *15 what prevented its completion was not defendant’s intention to abandon it but the victim’s escape.
Inasmuch as renunciation is an affirmative defense (see, People v Butts, supra, at 749, n 1), we agree with the lower courts that under no reasonable view of the evidence could the jury have found that defendant established by a preponderance of the evidence that the crime was avoided by his abandonment of the criminal effort "under circumstances manifesting a voluntary and complete renunciation of his criminal purpose” (Penal Law § 40.10 [3]).
V
Because this case is being remitted for a new trial on the crimes involving Clara B. and Elizabeth G., we comment briefly on defendant’s claim that the hearing court improperly denied his request to call the complainants as witnesses at the suppression hearing to testify whether any of the four victims who had viewed the lineup improperly discussed it with the others. The Appellate Division’s factual finding that "the complainants waited in a room that was attended by a police employee who was instructed to prevent conversation” (174 AD2d 430, 431, supra) is supported by evidence in the record. Accordingly, the hearing court did not abuse its discretion in denying defendant’s request because his claim of suggestiveness was purely speculative (see, People v Chipp, 75 NY2d 327, cert denied 498 US 833; cf., People v Ocasio, 134 AD2d 293 [witnesses viewing a photo array, in which defendant’s picture remained in the same position, were left unattended in the waiting room]).
We also conclude that the guilty pleas cannot be sustained because they were based on the promise that the sentences relating to the guilty pleas would be concurrent with the sentences imposed at trial (see, People v Boston, 75 NY2d 585, 589; People v Fuggazzatto, 62 NY2d 862, 863). Thus, in addition to the new trial on the crimes involving Clara B. and Elizabeth G., the judgment of conviction and sentence entered on defendant’s guilty pleas as well as the pleas themselves must be vacated, and that portion of the case remitted for further proceedings on the indictments. Accordingly, the Appellate Division order should be reversed and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

. For purposes of our analysis we accept the Appellate Division’s factual finding that Ms. Lopez "saw defendant getting into a car, transcribed his license plate number, and immediately called the precinct to report the license plate number.” (174 AD2d 430, 431, supra.) This finding is supported by Ms. Lopez’s testimony. We note, however, that Ms. Lopez’s mother testified to a different version of the events. According to this version, the mother observed the plate number and gave it to Ms. Lopez who called the police.

. Nor can we subscribe to the dissent’s notion that the recording’s similarity to defendant’s license plate number provides some "highly objective * * * underpinning” (dissenting opn, at 16) for holding that the recording accurately reflects Ms. Lopez’s observations and was therefore admissible. The dissent would assume the truth of the incriminating similarity to be proved and use that as the basis for admitting the very evidence that proves the similarity. Such a circular argument provides no basis for the admission of evidence and hardly comports with the fundamental concepts of fairness in our criminal jurisprudence (see, People v Millan, 69 NY2d 514, 520).

. We note in passing that the accuracy of the phone message’s content was cast in some doubt by the fact that the plate number recorded in the message, "567-TBP”, differed from the plate number of defendant’s car, "5967-TBP”. We note also that Ms. Lopez was not under any duty to report the plate number to the police and that there was no attempt to show that Detective Valentin’s regular course of business was the taking of phone messages. Thus, the case of Mayor of City of N. Y. v Second Ave. R. R. Co. (102 NY 572), relied on by the People, is not applicable (see, Johnson v Lutz, 253 NY 124, 127-128). Finally, we reject the claim that the past recollection recorded issue is unpreserved.

. In pertinent part, Penal Law § 40.10 provides:
"3. In any prosecution pursuant to section 110.00 for an attempt to commit a crime, it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof. * * *
"5. A renunciation is not 'voluntary and complete’ within the meaning of this section if it is motivated in whole or in part by (a) a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise, or which render more difficult the accomplishment of the criminal purpose, or (b) a decision to postpone the criminal conduct until another time or to transfer the criminal effort to another victim or another but similar objective.”