709 A.2d 310

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. QUINTON ALSTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 28, 1998—Decided May 12, 1998.

114

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Ivelisse Torres,* Public Defender, attorney for appellant (*Charles S. Lorber,* Designated Counsel, and *Lisa Chadwick Thompson,* on the brief).

*Glenn Berman,* Middlesex County Prosecutor, attorney for respondent (*Ronald C. Appleby,* Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Tried by a jury, defendant was convicted of carjacking, *N.J.S.A.* 2C:15–2(a)(2) (count one), armed robbery, *N.J.S.A.* 2C:15–1 (count two), conspiracy to commit carjacking and/or theft, *N.J.S.A.* 2C:5–2 (count three), possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a) (count four), and unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (count five). A custodial term of twelve years with a mandatory fiveyear parole disqualifier was imposed on the carjacking conviction with a concurrent four-year term imposed on the unlawful possession of a handgun. The remaining convictions were merged into the carjacking conviction. The necessary penalty and fee were also imposed.

On appeal, defendant contends:

POINT I. THE COURT BELOW ERRED IN INSTRUCTING THE JURY BY:

   a. Failing to charge the jury on the defense of renunciation;

   b. Incorrectly presenting the charge of the defense of duress;

   c. Reading the charge to the jury in a rapid pace. (Raised Below)

POINT II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN DEFENSE COUNSEL WAS NOT PERMITTED TO ARGUE DURING THE CHARGE CONFERENCE. (Raised Below).

POINT III. VERBAL ACTS OF CO–DEFENDANT WERE IMPROPERLY EXCLUDED BY THE TRIAL COURT AS HEARSAY. (Raised Below).

POINT IV. THE TRIAL COURT ERRED BY PROHIBITING DEFENSE COUNSEL FROM CROSS EXAMINING THE VICTIM WITH REGARD TO INCONSISTENT STATEMENTS. (Raised Below).

POINT V. THE PROSECUTOR'S ACTIONS THROUGHOUT THE TRIAL AND HIS COMMENTS DURING SUMMATION DENIED DEFENDANT A FAIR TRIAL. (Raised Below).

POINT VI. THE TWELVE YEAR SENTENCE IMPOSED BY THE COURT IS EXCESSIVE.

We have considered these contentions in light of the entire record and applicable law. We agree that the defense of renunciation

should have been charged, but find no merit to defendant's remaining contentions and do not further address those other contentions. *R.* 2:11-3(e)(2). Since the defense of renunciation applies only to the carjacking, armed robbery and the related possession of a weapon for an unlawful purpose, our reversal is only as to those convictions.

On September 22, 1993, Robert Porter, a tractor-trailer driver for Cohen's Express, had just picked up a loaded trailer with over $189,000 worth of merchandise from the Tommy Hilfiger warehouse in Edison. He was on his way to the front of the warehouse to sign for the load when, he told the jury, "a guy [defendant] jumped out of a moving van and [held] a gun on me, said stop, don't look." The person then ran around the cab of the truck, got into the passenger side, and ordered Porter to start driving to the front gate. According to Porter, when he told the person that he needed to get papers from the warehouse office in order to leave the warehouse yard, he was allowed to go to the office but was told "you better come back ... my friend know[s] your family ... you better come back." Porter got out of the truck, taking the keys with him, went inside the warehouse office, and told the secretary that he was being hijacked and to call the police.

Defendant explained what had occurred as follows. Two or three weeks before the incident, he had become acquainted with an individual named Bernard Short. Short had supplied defendant with drugs and money, seemingly out of generosity. On September 22, 1993, however, things changed. On that day, Short approached him and asked him to take a ride with him in his van. After picking up some drugs and beer, and with the two of them drinking and using the drugs, Short eventually drove to the Tommy Hilfiger warehouse. At that point Short told defendant:

> that I had to help him—it goes back to the drug incident, he was giving me money and drugs, and told me it was time to pay him and the people back for the money he was giving me and I had to help him take this truck. I couldn't—I told him I couldn't drive the truck. He told me not to be stupid, he wouldn't mean for me to drive the truck, he wanted to make the driver follow the van.

Defendant resisted, but Short told defendant that he had better help him because Short knew where his family lived. Short gave defendant a black bag which contained a gun. When defendant refused to take the gun, Short placed it inside a white towel and told defendant "don't let him see the barrel of it because if he sees the barrel of it he['ll] know it was a BB gun and it wasn't real." Defendant finally took the gun when they heard the truck approaching and Short blocked it with his van, testifying that "[Short] said we had to take the truck and if I didn't do it somebody—something was going to happen to my family." When the truck stopped, defendant got in the passenger side of the truck. He denied ever pointing the gun at Porter but "told Mr. Porter I had—that the driver of the van gave me a BB gun to use, but I was no criminal." He also testified that he showed Porter the gun by putting it on his lap and pulling back the towel. Defendant continued, "I told Mr. Porter that the man threatened my family and me, to go inside and call the police. And that's when he got . . . out of the truck and went inside." Once Porter got out of the truck, defendant did as well, discarding the gun. He and Short left the warehouse in the van and ultimately were stopped and arrested by the police. In a post-arrest signed statement to the police, defendant stated that he was "coaxed" into attempting the robbery by Short.

Defendant requested a jury charge on both the defense of duress and the separate defense of renunciation. The trial judge charged duress but declined to charge renunciation in light of *State v. Hughes,* 215 *N.J.Super.* 295, 521 A.2d 1295 (App.Div. 1986).

*Hughes* dealt with the defense of renunciation under *N.J.S.A.* 2C:5–2(e) in the context of conspiracy. In that context, the affirmative defense requires proof

by a preponderance of the evidence that [defendant], after conspiring to commit a crime, informed the authority of the existence of the conspiracy and his participation therein, and thwarted or caused to be thwarted the commission of any offense in furtherance of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of criminal purpose as defined in 2C:5–1d.;

provided, however, that an attempt as defined in 2C:5-1 shall not be considered an offense for purposes of renunciation under this subsection.

[*N.J.S.A.* 2C:5-2(e) ].

In *Hughes,* we found that the above statutory language "presupposes an acknowledgement by the actor that he actually conspired to commit a crime...." 215 *N.J.Super.* at 298, 521 *A.*2d 1295. In *Hughes,* the defendant had gone to the police to report that he had been solicited to take part in a robbery which eventually did take place one or two weeks later. *Id.* at 297, 521 *A.*2d 1295. However, there was no evidence presented at trial, nor could an inference have been drawn from the evidence that was presented, that he had joined in the enterprise prior to reporting it to the police. Under the circumstances, including the fact that the failure to charge renunciation of purpose was raised for the first time on appeal, *ibid.,* we could not conclude that the judge erred in failing to present that defense to the jury. We pointed out "[r]enunciation, after all, posits prior participation, and defendant could not renounce a conspiracy he had not joined." *Id.* at 298, 521 *A.*2d 1295.

The defense of renunciation urged by defendant here is that set forth in *N.J.S.A.* 2C:5-1(d) applicable to criminal attempts. In this respect, defendant argues that he "took sufficient voluntary, affirmative actions which prevented the commission of the charged offenses of carjacking, armed robbery, and possession of a weapon for unlawful purposes." He further contends that, despite his alternative defense of duress, the evidence was more than ample for a jury to reasonably conclude that he was in fact involved in an attempted carjacking when he entered the cab of the truck with a weapon and showed it to the driver, but that by telling the driver to get out of the truck and to call the police and then by later throwing his gun away, he renounced his involvement in the crime.

The jury was instructed in part as to carjacking:

[T]he statute upon which the carjacking—I'm going back to carjacking now. The statute upon which the carjacking is based reads as follows: A person is guilty of carjacking if in the course of committing a theft of a motor vehicle or an attempt to commit an unlawful taking of a motor vehicle he threatens an occupant or person

in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury.

In order for you to find the defendant guilty of carjacking the State is required to prove the following beyond a reasonable doubt: The first element is that the defendant was in the course of committing an unlawful taking of a motor vehicle.

I'll repeat that. The first element is that the defendant was in the course of committing an unlawful taking of a motor vehicle.

Now, as to this first element the State must prove beyond a reasonable doubt that the defendant was in the course of committing an unlawful taking of a motor vehicle. In this connection you are advised that an act is considered to be, quote, in the course of committing an unlawful taking of a motor vehicle *if it occurs in an attempt to commit the unlawful taking,* during the commission of the unlawful taking or during an immediate flight after the attempt or commission. In other words, when I talk about in the course of committing that *includes an attempt to commit the crime,* the actual commission of the crime or the flight after the crime.

An unlawful taking of a motor vehicle is defined as the unlawful taking or exercise of unlawful control over the motor vehicle of another with a purpose to deprive the owner thereof.

*What is attempt? A person attempts to commit a crime while acting with the same culpability required to commit the crime he purposely does anything which under the circumstances as a reasonable person would believe them to be is an act constituting a substantial step in the course of conduct planned to culminate in the commission of a crime. In order to be a substantial step the conduct of the defendant must be a strong corroboration of his criminal purpose, that is, his purpose to commit the actual crime.*

Now, the first element again is that the defendant was in the course of committing an unlawful taking of a motor vehicle, *in the course of commits an attempt to commit the crime.*

[Emphasis added.]

Indeed, carjacking, as charged to the jury here, requires that "in the course of committing an unlawful taking of a motor vehicle ... or *in an attempt to commit an unlawful taking of a motor vehicle* ... [the defendant] threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury...." *N.J.S.A.* 2C:15–2(a) (emphasis added). Similarly, robbery requires a theft, or an attempt to commit theft, in addition to certain aggravating factors. *N.J.S.A.* 2C:15–1(a). The robbery instructions incorporated by reference the "in the course of committing a theft" instructions given in connection with the carjacking charge and, thus, the attempt aspect of that charge. And the unlawful purpose of the second-degree possessory offense

was premised entirely upon the carjacking and/or robbery and, thus, also implicated the attempt aspect of those charges. As charged to the jury, then, these offenses included a criminal attempt as one of the necessary elements.

Prior to adoption of the Criminal Justice Code, renunciation does not appear to have been considered a defense to completed attempted offenses. *State v. Zupkosky,* 127 *N.J.L.* 218, 221–22, 21 *A.*2d 771 (E. & A.1941). *And see* Cannel, *New Jersey Criminal Code Annotated,* comment 9 on *N.J.S.A.* 2C:2–6(e) (1998) (quoting *MPC Commentary* § 11(e)(3) (1971)). In the context of criminal attempts, *N.J.S.A.* 2C:5–1(d) provides in pertinent part:

> Renunciation of criminal purpose. When the actor's conduct would otherwise constitute an attempt under subsection a. (2) or (3) of this section, it is an affirmative defense which he must prove by a preponderance of the evidence that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose....

A similar defense is permitted in the context of accomplice liability. *N.J.S.A.* 2C:2–6(e)(3). As explained by the drafters of the Model Penal Code:

> On balance, it is concluded that renunciation of criminal purpose should be a defense to a criminal attempt charge because, as to the early stages of an attempt, it significantly negatives dangerousness of character, and, as to later stages, the value of encouraging desistance outweighs the net dangerousness shown by the abandoned criminal effort. And, because of the importance of encouraging desistance in the final stages of the attempt, the defense is allowed even where the last proximate act has occurred but the criminal result can be avoided—e.g., where the fuse has been lit but can still be stamped out.
>
> [Cannel, *New Jersey Criminal Code Annotated,* comment 8 on *N.J.S.A.* 2C:5–1 (1998) (quoting *Model Penal Code,* p. 71–73 (Tentative Draft No. 10 1960)).]

One court has observed that the Model Code and the statutes derived from it, such as our Criminal Justice Code, differ from the traditional common-law view that, in the context of attempt crimes, it was logically impossible to renounce a crime which is already completed. Rather, "[t]he Model Code approach is that—so long as the criminal design is completely and voluntarily abandoned before it is carried out—it is not illogical to permit the defense even though the events have progressed to the point

where a criminal attempt has been committed ... excusing the defendant from attempt liability in return for the crime's prevention is seen as a net benefit to the community ... [and] encouraging actors to desist is said to diminish the risk that the crime will take place...." *People v. Taylor,* 80 *N.Y.*2d 1, 586 *N.Y.S.*2d 545, 551, 598 *N.E.*2d 693, 699 (1992) (citations omitted).

The defense of renunciation is an affirmative defense which must be proved by defendant by a preponderance of the evidence. *N.J.S.A.* 2C:5–1(d). *See also N.J.S.A.* 2C:2–6(e)(3); *N.J.S.A.* 2C:5–2(e).[1] But since defendant requested the charge, we must determine whether upon an examination of all the evidence, there was a rational basis for the jury to conclude that the affirmative defense was demonstrated. *Cf. State v. Crisantos (Arriagas),* 102 *N.J.* 265, 278, 508 *A.*2d 167 (1986). *And see State v. Toscano,* 74 *N.J.* 421, 442, 378 *A.*2d 755 (1977) (in the context of the then judicially created defense of duress, "defendant shall have the burden of producing sufficient evidence to satisfy the trial judge that the fact of duress is in issue. Such evidence may appear in the State's case or that of the defendant.").

The critical issue, then, is whether there was a basis in the record for a jury to conclude that defendant "abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." *N.J.S.A.* 2C:5–1(d). If so, the jury should have been charged on the defense, including the defendant's burden. *Cf. State v. Toscano, supra,* 74 *N.J.* at 442, 378 *A.*2d 755.

To be voluntary, the abandonment of criminal conduct must reflect a change in the defendant's purpose or a change of mind that is not influenced by outside circumstances. To be

---

[1] Since it is not before us, we do not consider constitutional issues implicated by shifting the burden of proof to the defendant. *See State v. Oglesby,* 122 *N.J.* 522, 525–32, 585 *A.*2d 916 (1991); *State v. Breakiron,* 108 *N.J.* 591, 612–16, 532 *A.*2d 199 (1987).

complete the abandonment must be permanent, not temporary or contingent. And, of course, the claimed renunciation must have resulted in avoidance of the crime. *N.J.S.A.* 2C:5–1(d); *People v. Taylor, supra,* 586 *N.Y.S.*2d at 551, 598 *N.E.*2d at 699.

■ Here, most certainly the jury could have rejected, as apparently it did, defendant's defense of duress and believed that he voluntarily entered into a conspiracy to commit the carjacking and armed robbery, thus arming himself with the weapon. But it also could have rationally concluded, believing his version as to what he did once he got into the cab, that he "had a change of heart" and not only let Porter go, but told him to call the police thereby to thwart Short's plans. The jury could have concluded that he did so not because of some external circumstances, such as Porter needing his papers signed to leave, but because he had a change of mind and intended to completely abandon the attempt to hijack the truck. And, of course, the hijacking was indeed prevented. The defense, then, should have been charged.

■ To the extent it may be suggested that the defenses of duress and renunciation are inconsistent such that both could not be charged here, we disagree. *See People v. Taylor, supra,* 586 *N.Y.S.*2d at 551, 598 *N.E.*2d at 699 ("defendant's entitlement to the renunciation charge is not defeated by reason of his denial of involvement in the crime."). *See also Mathews v. United States,* 485 *U.S.* 58, 108 *S.Ct.* 883, 99 *L.Ed.*2d 54 (1988) (permitting seemingly inconsistent defenses, entrapment and testimonial denial of involvement, to be raised in criminal trials); *State v. Moore,* 309 *N.J.Super.* 463, 467, 707 *A.*2d 486 (App.Div.1998) (defenses of self-defense and accident are not mutually exclusive); *State v. Branam,* 161 *N.J.Super.* 53, 390 *A.*2d 1186 (App.Div.1978), *aff'd o.b.,* 79 *N.J.* 301, 399 *A.*2d 299 (1979). Defendant here claimed that he was forced into initially attempting to hijack the truck. That defense of duress the jury clearly disbelieved. But he also contended that once he got into the truck, he effectuated a complete and voluntary abandonment of the criminal enterprise by his actions. We find no innate inconsistency in these positions. If

the evidence warrants both the defense of duress and, even if alternatively, the defense of renunciation, both should be charged to the jury. The evidence did so here.

Erroneous jury instructions on matters material to a jury's deliberations are ordinarily presumed reversible error. *E.g.,* *State v. Jackmon,* 305 *N.J.Super.* 274, 277–78, 702 *A.*2d 489 (App.Div. 1997), *certif. denied,* 153 *N.J.* 49, 707 *A.*2d 152 (1998). There are no circumstances here for us to conclude other than that reversible error occurred in the failure to charge the defense of renunciation as to the carjacking, armed robbery and possession of the weapon for unlawful purposes offenses.

The convictions as to those offenses, therefore, are reversed. The convictions of conspiracy and possession of the weapon without a permit, however, are unaffected by this error. Because the conspiracy conviction was merged with the carjacking and armed robbery convictions for sentencing, that conviction must be unmerged and defendant resentenced thereon. The matter is, therefore, remanded for a new trial as to the carjacking, armed robbery and possession for a unlawful purpose offenses, and for a resentencing as to the conspiracy conviction. The resentencing, however, may await the retrial on the reversed convictions.