■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN DOLAN, Appellant. [858 NYS2d 490]—

Kavanagh, J. Appeal from a judgment of the Supreme Court

(Lamont, J.), rendered April 20, 2006 in Albany County, upon a verdict convicting defendant of the crimes of attempted kidnapping in the second degree and assault in the second degree.

Admittedly distraught over the victim's decision to end their 17-year relationship, defendant, on the day in question, followed the victim in his automobile and confronted her in a public parking lot. When the victim saw defendant approaching, she ran to her automobile, got in and closed the door. Before she could lock it, defendant forced the door open, pushed his way into the vehicle and began to assault her. The victim resisted and a violent struggle ensued. Defendant not only threatened the victim with a loaded firearm, but he repeatedly struck her about the head, face and body with the weapon as well as with his fist. During the struggle, the victim was able to get out of the vehicle. Defendant followed her and physically attempted to force her back into her automobile. The victim resisted and screamed for help shouting "he's going to kill me." The victim continued to resist and, as she struggled with defendant, she knocked the firearm from his hand, which fell to the ground and slid beneath her vehicle. As bystanders gathered, defendant ended the attack and fled the scene in his vehicle. A short time later, defendant was stopped by a police officer in a routine traffic stop for not wearing a seat belt. The officer, unaware of what had transpired in the parking lot, approached defendant's vehicle and discovered that defendant, in an apparent suicide attempt, had stabbed himself in the chest with a large kitchen knife. Defendant was immediately transported to a local hospital and, while he lay unconscious and was receiving medical care, a police officer was given his clothing by hospital personnel. During a subsequent search of the clothing, the police recovered what appeared to be a suicide note.

Defendant was thereafter indicted for the crimes of attempted murder in the second degree, attempted kidnapping in the second degree, assault in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. After trial, defendant was found guilty of attempted kidnapping in the second degree and assault in the second degree, and he was sentenced to an aggregate prison term of 10½ years, with five years of postrelease supervision. Defendant now appeals from his judgment of conviction.

"Viewing the evidence in a neutral light and weighing the probative force of the conflicting testimony and the relative strength of any conflicting inferences which may be drawn, as well as giving due deference to the jury's credibility assessments" (*People v Pomales*, 49 AD3d 962, 963 [2008] [citations

omitted]; *see People v Jackson*, 48 AD3d 891, 892 [2008]), we disagree with defendant's claim that the verdict was against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *see also People v Romero*, 7 NY3d 633, 643 [2006]). The testimony offered by the victim and numerous eyewitnesses detailing the circumstances of defendant's attempt to abduct the victim and restrain her inside the vehicle provided ample evidentiary support for the jury's verdict.

We also find no merit in defendant's claim that Supreme Court erred by failing to charge the jury with the affirmative defense of renunciation. A defendant is entitled to the benefit of any defense that is supported by a reasonable view of the credible evidence introduced at trial, and failure to charge a jury as to the existence of such a defense, upon request, may well constitute reversible error (*see People v Butts*, 72 NY2d 746, 750 [1988]). In determining whether the jury should be given a particular charge, the trial court must look to all of the evidence introduced at trial and view it in a light most favorable to the defendant (*see id.; People v Watts*, 57 NY2d 299, 301 [1982]). If the charge requested is supported by a reasonable view of the credible evidence, even if inconsistent or not supported by the defendant's trial testimony, it must be given to the jury (*see People v Butts*, 72 NY2d at 750; *People v Padgett*, 60 NY2d 142, 146 [1983]). However, when, as here, the charge involved an affirmative defense for which a defendant has the burden of proof, the threshold that must be met for the charge to be properly submitted to the jury is not simply that the proposed defense is supported by a reasonable view of the evidence, but that the jury, from all that has been submitted at trial, could reasonably conclude that the defendant has proven the existence of the defense by a preponderance of the credible evidence (*see People v Butts*, 72 NY2d at 749 n 1; *see also People v Taylor*, 80 NY2d 1, 15 [1992]).

To obtain the benefit of an affirmative defense such as renunciation, defendant must prove that he voluntarily and completely renounced his attempt to abduct the victim and, in the process, acted in such a way as to clearly manifest his intention to fully and completely abandon the criminal effort (*see* Penal Law § 40.10 [3], [5]; *People v Taylor*, 80 NY2d at 12-15]). He must also prove that the renunciation was not motivated in whole or in part by a concern that he would be detected or apprehended or that the surrounding circumstances rendered the victim's abduction more difficult (*see People v Taylor*, 80 NY2d at 12-15). Here, the evidence does not support the conclusion that defendant, when he ended his attack on the victim and left the scene,

did so because he had a change of heart and, for that reason alone, voluntarily abandoned his intention to abduct the victim. What has been established, and has not been the subject of any meaningful contradiction, is that defendant, while armed with a loaded firearm and a large knife, confronted the victim as she walked to her vehicle in a public parking lot. The victim, realizing his presence, ran to the vehicle and entered it but, before she could lock the driver's door, defendant was able to force it open, grab her by the arm, pull out a firearm and threaten her. A violent confrontation ensued, with the victim vigorously resisting defendant's efforts to physically force her over the vehicle's console and into the front passenger seat. As the victim continued to resist, defendant repeatedly punched her with his fist. At some point during the encounter, the victim dislodged the firearm from defendant's hand, causing it to fall to the ground beneath her vehicle. As the struggle continued, both inside and outside the vehicle, passersby witnessing the attack gathered and heard the victim repeatedly scream for help. It was only then, according to the victim's testimony, that defendant "just ran . . . he took off after help arrived for me."

Four eyewitnesses to the attack also testified, three of whom actually saw defendant leave the scene. One testified that she heard the victim scream " '[h]elp, he's going to kill me' " and that "as I ran that way, then there was a man that was there and he took off running up in the back part of our parking lot." Another testified, "I chased him down to get the license number," while a third eyewitness described defendant as he drove his car away as "flying down the hill and some gentleman ran out in front of me and said, 'Stop him, please stop him.' " The witness then saw defendant's vehicle "hit the dip, there [were] sparks flying out from under the car, he hung a left and he disappeared." Taken as a whole, this testimony supports but one conclusion—defendant fled the scene out of fear of detection or apprehension (*see* Penal Law § 40.10 [5]) and not because he voluntarily abandoned his effort to abduct the victim (*see People v Taylor*, 80 NY2d at 12-15; *People v Jenks*, 239 AD2d 673, 675-676 [1997]).

Moreover, defendant, in his trial testimony, denied ever harboring an intent to abduct or harm the victim. Even though such testimony is inconsistent with the renunciation defense, a statement charging that defense must still be given to the jury if other evidence at trial provides a reasonable basis for it (*see People v Butts*, 72 NY2d at 748; *People v Padgett*, 60 NY2d at 146; *People v Watts*, 57 NY2d at 301). However, defendant's failure to speak to this defense and support it in his own trial

testimony only serves to underscore the lack of credible evidence in the record that supports the conclusion that defendant truly had a change of heart when he ended his attack on the victim and fled the scene. In fact, no witness to the attack provided any testimony that would lead a reasonable person to conclude that defendant, at any time during his attack on the victim, manifested a "voluntary and complete renunciation of his criminal purpose" (Penal Law § 40.10 [1]; *see People v Taylor*, 80 NY2d at 13-14; *People v Jenks*, 239 AD2d at 675). For that reason, Supreme Court properly denied defendant's request to submit this defense to the jury.

Defendant also argues that County Court (Herrick, J.) erred by failing to suppress the contents of the note found by the police in his clothing when he was hospitalized and receiving treatment for his stab wound. This note, and much of what defendant said in it, was cumulative to other evidence introduced at trial and its admission was, at best, harmless error. Accordingly, even if we were to conclude that the note was improperly received into evidence and should have been suppressed, we find that " '[t]here is no reasonable possibility that the [admission of the suicide note] might have contributed to defendant's conviction because proof of defendant's guilt, without reference to the [note], is overwhelming' " (*People v Binns*, 299 AD2d 651, 654 [2002], *lv denied* 99 NY2d 612 [2003], quoting *People v Smith*, 97 NY2d 324, 330 [2002]; *see People v Crimmins*, 36 NY2d 230, 242 [1975]).

Finally, defendant contends that the aggregate prison term of $10^{1}/_{2}$ years followed by five years of postrelease supervision is harsh and excessive. Based upon our review of the record, we perceive neither an abuse of discretion by Supreme Court nor the existence of any extraordinary circumstances warranting a reduction in the sentence imposed in the interest of justice (*see People v Salmans*, 49 AD3d 961, 961 [2008]; *People v Lozada*, 35 AD3d 969, 971 [2006], *lv denied* 8 NY3d 947 [2007]; *People v Washington*, 4 AD3d 546, 548-549 [2004]), particularly considering the brutal nature of defendant's attack upon the victim and defendant's failure to exhibit any meaningful remorse for his actions.

We have reviewed defendant's remaining claims and find them to be unpersuasive.

Cardona, P.J., Spain and Carpinello, JJ., concur.

Stein, J. (dissenting). Because I would find that Supreme Court committed reversible error in denying defendant's request that it submit the renunciation defense to the jury, I must respectfully dissent.

"In any prosecution pursuant to [Penal Law §] 110.00 for an attempt to commit a crime, it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his [or her] criminal purpose, the defendant avoided the commission of the crime attempted by abandoning his [or her] criminal effort" (Penal Law § 40.10 [3]). The rationale for this affirmative defense emphasizes "that excusing the defendant from attempt liability in return for the crime's prevention is seen as a net benefit to the community" (*People v Taylor*, 80 NY2d 1, 13 [1992]).

In my view, there is an interpretation of the credible evidence introduced at trial that would reasonably support the conclusion that defendant, by his conduct, manifested a voluntary and complete renunciation of his plan to abduct the victim and the jury could reasonably conclude that defendant has proven the existence of that defense by a preponderance of the credible evidence (*see id.*). It is uncontroverted that defendant left the parking lot without the victim. The victim, herself, testified that defendant never took her from the parking lot or even attempted to start her car while they were both in it, despite the fact that the keys were in the ignition. The victim further testified, consistent with the testimony of other witnesses, that there were bystanders present throughout the assault and that no one intervened. One witness testified that he did not believe that it was a life or death situation. It is also significant that, during the altercation, defendant told one eyewitness not to get involved and then continued to assault the victim in his presence. Defendant testified that he then changed his mind, he walked to his car, knowing that he was going to attempt suicide, he voluntarily left the parking lot in his own vehicle without the victim, and he, in fact, attempted to commit suicide.

Even though there are conflicting versions of the incident, under a reasonable view of the evidence and viewing the evidence in the light most favorable to defendant (*see People v Butts*, 72 NY2d 746, 750 [1988]), the jury could have found that defendant's withdrawal from participation in the offense of kidnapping was not motivated by fear of detection or apprehension, by a belief that circumstances existed which would render the accomplishment of his criminal purpose more difficult or by a decision to merely postpone the criminal conduct; thus, the jury could have found that defendant abandoned his criminal effort under circumstances manifesting a voluntary and complete renunciation of his criminal purpose (*see* Penal Law § 40.10 [5]; *People v Taylor*, 80 NY2d at 13-15). Furthermore, defendant's denial of intent to commit the crime charged does not defeat his

entitlement to the renunciation charge (*see People v Taylor*, 80 NY2d at 14; *People v Butts*, 72 NY2d at 748-749). Thus, I would find that the failure to so charge the jury constituted reversible error (*see People v Watts*, 57 NY2d 299, 301 [1982]). Accordingly, I would reverse the judgment of conviction and vacate the sentences imposed as to both charges, as the charge of assault in the second degree cannot stand in the absence of a conviction of attempted kidnapping in the second degree (*see* Penal Law § 120.05 [6]).

Ordered that the judgment is affirmed.